Richard G. Grant
Tex. Bar No. 08302650
CMLaw PLLC
National Litigation Support Center
13101 Preston Road, Suite 110-1510
Dallas, Texas 75240
Telephone: 214-210-2929
Email: rgrant@cm.law

ATTORNEYS FOR
PIVOTAL MED SUPPLY, LLC

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 25-40248-ELM-11(V) |
| | § | Chapter 11 (Subchapter V) |
| PIVOTAL MED SUPPLY, LLC, | § | |
| | § | |
| Debtor. | § | |
| | § | |

### CHAPTER 11, SUBCHAPTER V PLAN OF REORGANIZATION OF PIVOTAL MED SUPPLY, LLC

Dated: April 23, 2025

# I.     INTRODUCTION

## A.     Description and History of the Debtor's Business

The Debtor was formed in 2022 and commenced sales operations in 2024. The Debtor is a Texas-based distributor of durable medical equipment/home medical equipment, including wound care products in a manner similar to a pharmacy on a "prescription order" basis. The Debtor has monthly revenue of approximately $400,000, expenses of $650,000, approximately $900,000 in unsecured claims against the estate, and over 40 employees. The company is in startup mode, continuing to incur monthly operational losses funded by Loans from its principals, Gregory See and Noah Seitel.

The Debtor is the defendant in the lawsuit captioned above initiated by Next Science, LLC ("Plaintiff"), alleging breaches of contract by its former employees (now employed by the Debtor) of their respective confidentiality agreements and covenants not to compete in Next Science, LLC v. Lance Canington, Shaun Gyger, Brian Kelly, Traci Lavender, Johnny Mendoza, Michael Morello, Jonathan Poole, Mary Shaw, Ari Virtanen, Total Ancillary Management, LLC and Pivotal Med Supply, LLC, Case No. 16-2024-CA-02665-AXXX-MA (the "State Court Case") in the Circuit Court of the Fourth Judicial Circuit, in and for Duval County, Florida (the "State Court"). The State Court Case was commenced on May 16, 2024, and the Debtor was added on June 18, 2024. The case has been pending against the Debtor as of the Petition Date for approximately 7 months. The Debtor has been added to the lawsuit under counts that the Debtor tortiously interfered with the contracts between the former employees and the Plaintiff.

In addition to the ongoing operational losses, the Debtor has been accruing the cost of litigation in the State Court Case, averaging approximately $100,000 per month. The defendants in the case include the Debtor and seven of its 40+ employees. The Debtor is the sole source of funding of the defense costs of the Debtor, its employees, and a named related defendant, Total Ancillary Management, LLC. Litigation costs incurred by the Debtor to date exceed $500,000. The litigation is in the very early stages. No substantive rulings have been issued by the State Court. A hearing has not been held on the preliminary injunction requested in the case.

The Debtor anticipates that the ongoing litigation costs of the litigation, assuming past as prologue, will exceed over $1.5 million through trial. The parties appear to be embroiled in bitter, acrimonious litigation. No meaningful settlement conference nor significant progress towards settlement has occurred prior to the Petition Date.

A preliminary injunction hearing was scheduled before the State Court to be held on January 27, 2025. On January 23, 2025 (the "Petition Date"), the Debtor commenced its Chapter 11 (Subchapter V) proceeding in the United States Bankruptcy Court for the Northern District of Texas (Fort Worth Division) (the "Home Bankruptcy Court"). On the same day, the Debtor filed a Notice of Removal, removing the State Court Case to this Court, where the present Adversary Proceeding is currently pending. On February 3, 2025, the Plaintiff filed a motion with the Florida Bankruptcy Court to remand and/or abstain from the proceeding (Florida Bankruptcy Court ECF 7, the "Motion to Remand"). The Florida Bankruptcy Court transferred the case to the Home Bankruptcy Court.

This Subchapter V Plan of Reorganization provides for the payment to creditors of a value greater than both (a) the liquidation value of the company and (b) payment of the discounted present value sum of the projected net disposable income of the Debtor over the next three years, or payments over 3 years of the projected net disposable income of the Debtor. The Debtor has prepared two projected cash flow projections: one presuming the continued employment of the targeted employees, and one providing for the projected income in the event the Plaintiff is successful in its efforts to block employment of the employees.

**B.      Explanation of Chapter 11**

Chapter 11 is the primary reorganization chapter under the Code. Debtor is a small business and has decided to proceed under Subchapter V – Business Debtor Reorganization ("Subchapter V"). Under Subchapter V, the Debtor is permitted to reorganize its business for the benefit of its creditors, equity interest holders, and itself. As required by the Code, the Plan places claims in various classes and describes the treatment each class will receive. After such Plan has been filed, it must be accepted by claimholders and equity interest holders or determined by the Court to be fair and equitable with respect to each class of claims or interests that is impaired and has not accepted the Plan.

**C.      Explanation of the Confirmation Process**

Acceptance of the plan by the Creditors and Equity Interest Holders is important. In order for the plan to be accepted by each class of claims, the creditors that hold at least two thirds (2/3) in amount and more than one-half (1/2) in number of the allowed claims actually voting on the plan in such class must vote for the plan and the equity interest holders that hold at least two-thirds (2/3) in amount of the allowed interests actually voting on the plan in such class must vote for the plan. As discussed below, Subchapter V Chapter 11 does not require that each holder of a claim against, or interest in, the debtor vote in favor of the plan in order to be confirmed by the Court.

Confirmation of the plan discharges the Debtor from all of its pre-confirmation debts and liabilities except as expressly provided for in the plan and Section 1141(d) of the Code. Confirmation makes the plan binding upon the Debtors and all claimants, equity interest holders and other parties-in-interest, regardless of whether or not they have accepted the plan.

**D.      Voting Procedures**

**Administrative Claims.** Administrative Claims are not classified and do not vote under the Plan.

**Unimpaired Class**. The Debtor is not aware of any priority claims. To the extent that any exist, they are unimpaired by the Plan and not entitled to vote.

**Impaired Class**. The Class 2 Claimants are impaired as defined by Section 1124 of the Code. The Debtor is seeking the acceptance of the Plan by Claimants in Class 2. Each holder of an Allowed Claim in Class 2 may vote on the Plan by completing, dating, and signing the ballot sent to the holder and filing the ballot as set forth below.

For all Classes, the ballot must be returned to Richard G. Grant CMLaw PLLC, National Litigation Support Center, 13101 Preston Road, Suite 110-1510, Dallas, Texas 75240 or via email at rgrant@cm.law. To be counted, ballots must be **RECEIVED** no later than at the time and on the date stated on the ballot.

E.      <u>Best Interests of Creditor Test</u>

Section 1129(a)(7) of the Code requires that each impaired class of claims or interests accept the Plan or receive or retain under the Plan on account of such claim or interest, property of a value as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. If Section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, each holder of a claim of such class will receive or retain under the Plan, on account of such claim, property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims. In this case, the Debtor is not aware of any secured creditors. In order for the Plan to be confirmed, the Bankruptcy Court must determine that the Plan is in the best interests of the Debtor's creditors. Accordingly, the proposed Plan must provide the Debtor's creditors with more than they would receive in a Chapter 7 liquidation. It is anticipated that in a Chapter 7 liquidation, the Debtor's creditors would receive a maximum of **$601,210** (see Liquidation Analysis attached hereto as **Exhibit C**). Accordingly, since the Plan proposes to the Debtor's creditor more than that, such creditors would receive more money under the Plan than they would receive in a Chapter 7 liquidation. Accordingly, the Plan satisfies the requirements of Section 1129(a)(7).

The Plan provides for release of all Avoidance Actions. Avoidance Actions means any and all actual or potential Claims and Causes of Action to avoid a transfer of property or an obligation incurred by any of the Debtors pursuant to any applicable section of the Bankruptcy Code, including sections 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a) of the Bankruptcy Code, or under similar or related state or federal statutes and common law. Section 547 of the Bankruptcy Code permits the trustee to avoid and recover from creditors preference payments made within the 90-day period before the bankruptcy filing. A "preference" is defined by Section 547 of the Bankruptcy Code as (a) payment on an "antecedent" (meaning a previously incurred as opposed to current) debt; (b) made while the debtor was insolvent (meaning its assets are less than its liabilities); (c) to a creditor, within 90 days of the filing of the bankruptcy (or 1 year, if an insider); (d) that allows the creditor to receive more on its claim than it would have, had the payment not been made and the claim paid through the bankruptcy proceeding. The payments made to creditors within 90 days of the Petition Date or to Insiders within 1 year of the Petition Date are described in **Exhibit E** attached hereto. The Debtor has analyzed the payments and determined that each payment was made in the ordinary course of business in accordance with typical business terms on the due date of each payment. Accordingly, the Debtor places little value on the Section 547 Claims and any other of the Avoidance Actions.

## II.    FINANCIAL PICTURE OF THE DEBTOR

### A.    Financial History and Background of the Debtor

Attached hereto collectively as **Exhibit A** are the Debtor's six-month trailing monthly balance sheet and statement of operations.

Claims scheduled by the Debtor in this case consist of no secured claims, no priority claims, claims of trade vendors in the amount of $1,230,454.93 and the claims of insiders for loans to the Debtor in the amount of $4.512MM.  Proofs of Claim have been filed in the case in the total amount of $8.8MM, including the disputed proof of claim of Next Science, LLC in the amount of $8,402,477.92 (leaving approximately $400,000 in other proofs of claim).

### B.    Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached hereto as **Exhibit C**.

### C.    Procedural History of the Debtor

The Debtor filed a voluntary petition initiating this Chapter 11 (Subchapter V) proceeding on January 23, 2025.  On January 24, 2025, the Court entered its Scheduling Order in this Case.

On January 27, 2025, the Debtor filed a number of "first day" motions including a motion to pay prepetition wage obligations, a motion to approve lending to the Debtor by certain insiders, a motion to establish noticing procedures, a motion regarding dispensing with a patient care ombudsman, a motion to extension of time to file Schedules and Statement of Financial Affairs. In addition, the Debtor filed the Declaration of Noah Seitel in Support of Debtor's First Day Motions [ECF 11]. Each of these motions were granted by the Court on or about February 2, 2025 and February 20, 2025.

On January 29, 2025, the Office of the United States trustee appointed Katharine B. Clark as the Subchapter V Trustee in this case. On February 23, 2025, the Debtor timely filed its Schedules and Statement of Financial Affairs in the Case. On February 28, 2025, the Office of the United States Trustee conducted the meeting of creditors pursuant to section 341(a) of the Bankruptcy Code.

On February 10, 2025, the Debtor filed a motion to extend the automatic stay to stay litigation as against the nondebtor defendants in the Next Science Litigation.  This motion was granted in part and denied in part as stated on the record on February 20, 2025.

On March 5, 2025, the Debtor timely filed its Pre-Status Conference Report Under Subchapter V of the Bankruptcy Code. This Court timely held the Subchapter V status conference on March 19, 2025.

On February 12, 2025, the Debtor filed its application [ECF 49] to retain Richard Grant and the CM Law PLLC firm to represent the Debtor in this proceeding. On March 4, 2025, the Debtor filed its application [ECF 75] to retain Thames Markey, PA as special counsel in the Next Science Litigation. Both applications were granted.

On March 25, 2025, Next Science filed its motion to lift the automatic stay in the main bankruptcy case (Case No. 25—bk-20428) [ECF 45], seeking to allow the Next Science Litigation to proceed as to all defendants, including the Debtor. On March 24, 2025, Next Science filed its motion to remand in the associated adversary proceeding (Case No. 25-ap-4036) [ECF 7], seeking to remand the adversary proceeding to the Florida State Court. The Debtor and others have objected to both motions. These motions are set for hearing to be held before this Court on April 30, 2025.

On April 23, 2025, the Debtor timely filed this proposed Plan with the Bankruptcy Court.

D. **Post-Confirmation Management**

The Debtor will continue managing its business after confirmation. The prepetition officers and directors will continue to manage the Debtor at the same historical compensation after confirmation at the discretion of the Purchaser, as the new shareholder. There are no known agreements or promises between such officers and directors with the Purchaser other than as set forth herein.

III. **CLASSIFICATION OF CLAIMS AND TREATMENT OF CLAIMS**

This Plan of Reorganization (the Plan) under chapter 11 (Subchapter V) of the Bankruptcy Code (the Code) proposes to pay creditors of the Debtor in distribution(s) on the Distribution Date with respect to Allowed Claims from the Plan Cash Fund funded by the Purchase Price.

The Plan provides for unclassified claims (under section § 1123(a)(1), administrative expense claims, and priority tax claims are not in classes) as follows:

| Administrative Claims | Unimpaired – Not entitled to vote |
|---|---|
| | Each holder of an administrative expense claim allowed under § 503 of the Code, will be paid in full on the later of the Effective Date of this Plan or within 10 business days such claims become an Allowed Claim, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. |
| Priority Tax Claims | Impaired – Not Entitled to Vote |
| | Each holder of an allowed priority tax claim will be paid in equal monthly installments consistent with 11 U.S.C. § 1129(a)(9)(C) at 8% per annum or earlier in one or more prepayments as determined by the Reorganized Debtor. |

| Statutory Fees/Prospective Quarterly Fees | No quarterly fees are payable under 28 U.S.C. § 1930(a)(6) or (a)(7). |
| --- | --- |

The Plan classifies the remaining claims of creditors and interest holders as follows:

| Class 1 **Secured Claims** Includes all claims allowed under 11 U.S.C. § 506. | Unimpaired – Not Entitled to Vote (deemed to accept) Any Holders of Allowed Secured Claims shall receive, at the option of the Debtor, (i) the legal, equitable and contractual rights of the Allowed Secured Claim will remain unaltered, and the Holder of such Claim shall retain any Liens and/or security interests securing such Claim, or (ii) the Debtor will provide other treatment that will render such Secured Claim Unimpaired under section 1124 of the Bankruptcy Code. Class 2 is Unimpaired. |
| --- | --- |
| Class 2 **Priority Unsecured Claims** Includes all allowed claims entitled to priority under § 507(a) of the Code (except administrative expense claims under § 507(a)(2), and priority tax claims under § 507(a)(8). | Unimpaired – Not Entitled to Vote (deemed to accept) Each holder of a Allowed Class 2 Priority Claim will be paid in full on the Distribution Date |
| Class 3 **General Unsecured Claims** Includes all allowed claims under 11 U.S.C. § 502 other than Secured Claims and Priority Unsecured Claims | Impaired – Entitled to Vote Each holder of an Allowed Class 3 General Unsecured Claim shall receive a Plan Note in an amount equal to (a) a pro rata portion of the Liquidation Value Fund on each Distribution Date with respect to such holder; plus (b) a pro rata portion (including, for purposes of such proration, all Allowed Claims in Class 3 and Class 4) of the Going Concern Value Distributions on each Distribution Date with respect to such holder |
| Class 3A **Convenience Claims** Includes all Allowed General Unsecured Claims under $1,000 | Unimpaired – Not Entitled to Vote (deemed to accept) Each holder of an Allowed Class 3A Claim will be paid in full on the Distribution Date in an aggregate amount of all creditors in this class not to exceed $20,000 |
| Class 4 **Subordinated Claims** Includes all claims | Impaired – Entitled to Vote Each holder of an Allowed Subordinated Claim shall receive a Plan Note in an amount equal to a share *pari passu* with the |

| | |
|---|---|
| subordinated pursuant to 11 U.S.C. § 510 | holders of Allowed Claims in Class 3 in the Going Concern Value Distributions. In the event no vote is cast in this Class nor an objection to confirmation of a member of this Class, this Class shall be deemed to accept the Plan. |
| **Class 5**<br>**Equity Interests**<br><br>Includes all interests of equity security holders of the Debtor | Unimpaired –<br>Not Entitled to Vote (deemed to accept)<br><br>All equity interests in the Debtor are unimpaired. |

Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)

## IV.    MEANS FOR IMPLEMENTATION OF THE PLAN

The Debtor will continue operating its business. The Debtor's Plan will break the existing claims into five (5) classes of Claimants and Equity Owners. The Debtor shall pay the allowed claims of Estate Professionals and the Subchapter V Trustee, and holder of priority claimants, if any, in cash on the Effective Date.

Holders of Allowed General Unsecured Claims shall be paid by the Disbursement Agent on the Distribution Date with respect to each such Claim.

### A.    Satisfaction of Claims and Debts:

The treatment of and consideration to be received by holders of Allowed Claims or interests pursuant to this Article VI of this Plan shall be the sole and exclusive means for full settlement, release and discharge of their respective Claims, Debts, or interests as against the Debtor. On the Confirmation Date, the Reorganized Debtor shall assume all duties, responsibilities, and obligations for the implementation of this Plan.

**Class 1 Claimants (Allowed Administrative Claims of Professionals and Subchapter V Trustee)** are unimpaired and will be paid in full on the Effective Date of this Plan. Professional fees are subject to approval by the Court as reasonable. The Debtor's attorney's fees approved by the Court and payable to CMLaw PLLC (the "Debtor's Professionals") will be paid immediately following the later of Confirmation or approval by the Court. The Subchapter V Trustee fees will be paid immediately following the later of Confirmation or approval by the Court out of the available cash. The Debtor's case will not be closed until all allowed Administrative Claims are paid in full. The Class 1 Claimants are not impaired under this Plan. All Fee Applications must be filed no later than 60 days after the Effective Date of the Plan.

### B.    Mechanics/Implementation of Plan

#### 1.    Election to Continue Business

**Going Concern**.   This is a plan of reorganization, as such, the Debtor shall become the Reorganized Debtor on the Effective Date.  All assets of the estate shall vest in the Reorganized

Debtor on the Effective Date. The Reorganized Debtor shall be deemed to have assumed all Assumed Contracts as of the Effective Date. The Reorganized Debtor shall be deemed to have assumed all obligations under the Plan for the payment of Plan Distributions to holders of Allowed Claims.

**Liquidation**. In the event the Reorganized Debtor determines, in its sole and absolute discretion, that it desires to liquidate, it may do so by commencing and concluding the orderly sale of all assets of the Debtor and making interim and final Distributions to holders of Allowed Claims a total amount equal to the Liquidation Value Fund (net of prior distributions to holders of Claims under the Plan after the Effective Date), in its capacity as Disbursing Agent.

## 2. Issuance of Plan Notes

On later of the Effective Date or the date on which a Claim in Class 3 or 4 shall become an Allowed Claim the Debtor shall issue an unsecured promissory note (each, a "Plan Note") payable to each of the holders of an Allowed Claim in an amount equal to the Total Distribution Amount with respect to such Allowed Claim. The Total Distribution Amount shall be the amounts set forth with respect to such claim pursuant to Class 3 and 4 hereof.

## 3. Disbursing Agent

All distributions under the Plan shall be made by the Disbursing Agent. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of his duties unless otherwise ordered by the Bankruptcy Court. Additionally, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Liquidation Value Fund.

The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; and (c) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of the Plan.

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes), and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses), made by the Disbursing Agent shall be from the Plan Cash Fund.

To the extent Cash is distributed under the Plan, no Cash payment of less than $25.00 shall be made to a holder of an Allowed Claim on account of such Allowed Claim, and such amounts shall be retained by Reorganized Debtors.

Non-Consensual Plan Payment Distribution Terms: To the extent this Plan is confirmed as a non-consensual plan pursuant to 11 U.S.C. § 1191(b), the Disbursing Agent shall initially be the Sub-chapter V Trustee; provided, however, the Court retains authority to mandate her successor. The following provisions shall govern the Disbursing Agent's obligation with respect to issuance of Plan Notes on account of Allowed Claims pursuant to the Plan.

The Disbursing Agent shall file fee applications requesting Court approval of her fees and expenses no later than 30 days following the Effective Date which the Court expressly retains jurisdiction to review and approve. The Disbursing Agent's fees shall be based on the prevailing hourly rate charged by the Sub-Chapter V Trustee, unless otherwise ordered by the Court. The Reorganized Debtor shall pay the Disbursing Agent's court-approved fees and expenses within 10 days of the entry of an order approving the fees and expenses.

The Subchapter V Trustee, as the Disbursing Agent, will not distribute more than $50,000.00 in disposable income at one specific time. Therefore, the Subchapter V Trustee will not be required to obtain a separate or additional bond.

The Disbursing Agent shall provide all required reports to the United States Trustee for review during the period in which the Disbursing Agent continues to make plan payments. Upon completion of all Plan Payments, the Disbursing Agent shall submit the final report and final account of the administration of the Debtor's estate to the United States Trustee for review pursuant to Bankruptcy Code section 1183(b)(1). After review, the final report and account will be filed with the Court.

Neither the Sub-chapter V Trustee nor the Disbursing Agent shall have any obligations to pursue and/or manage the Reorganized Debtor's pursuit of causes of action. Rather, the pursuit and management of the Debtor's causes of action shall be coordinated by and among the Reorganized Debtor's board of directors and the attorney retained by the Reorganized Debtor to pursue causes of action.

Neither the Sub-Chapter V Trustee nor the Disbursing Agent shall have any obligation or responsibility to manage or otherwise operate the Debtor's or the Reorganized Debtor's business or financial affairs.

The Debtor, and not the Disbursing Agent, shall pay Court approved Subchapter-V Trustee fees and expenses as provided in the Plan.

During the term of the Plan, Debtor shall timely file all tax returns and make all tax payments and deposits, if any, when due. If the Debtor is not required to file tax returns for any period during the Plan term, the Reorganized Debtor shall provide the Subchapter V Trustee with a statement to that effect. For each tax return that becomes due after entry of this Order, Debtor shall, within fourteen (14) days of filing the return, provide the Subchapter V Trustee with a complete copy of the tax return, including all schedules and attachments.

No later than 14 days after Substantial Consummation of the Plan occurs, the Debtor shall file with the Court and serve upon the Sub-Chapter V Trustee, U.S. Trustee, and all parties in interest, notice of Substantial Consummation of the Plan as provided under 11 U.S.C. §1183(c)(2).

## C.   Compliance with 11 U.S.C. §§1191(B), (C) and (D) and Feasibility of Plan

The Debtor's Plan is based upon paying its unsecured creditors an amount in excess of the Liquidation Value. Accordingly, the Plan satisfies the "best interest of creditors best under 11 U.S.C. § 1129(a)(7) and is fair and equitable within the definition of 11 U.S.C. § 1191(b). The

Debtor believes the Plan to be feasible, in that there is reasonable likelihood that the Debtor will be able to make all payments required under the Plan.

## V.    ALLOWANCE AND DISALLOWANCE OF CLAIMS

### A.    Claims Bar Date.

The Bar Date for all creditors or interest holders, other than governmental units, to file proofs of claim with the Bankruptcy Clerk was April 3, 2025. The Bar Date for governmental units to file Proofs of Claim with the Bankruptcy Clerk was not later than 180 days from petition date, which date is July 22, 2025. In accordance with Bankruptcy Rule 3003(c), any entity or Person whose Claim was listed in the Schedules, or holds a Contingent Claim, Unliquidated Claim, or Disputed Claim, and did not file a proof of Claim before the Bar Date, shall not be treated as a Creditor with respect to such Claim for purposes of voting or distribution.

### B.    Claims Administration.

Except as otherwise specifically provided in the Plan, after the Effective Date, the Disbursing Agent shall have the authority to: (1) file, withdraw, or litigate to judgment, objections to Claims; (2) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer Claims to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

### C.    Objection Deadline.

Following the Effective Date, the Reorganized Debtor and the Disbursing Agent shall have standing to object to Claims. Within sixty (60) days from the Effective Date, unless such date is extended by Order of the Bankruptcy Court upon motion filed prior to the deadline and after notice and hearing (the "Objection Deadline"), any party in interest may object to any Claim and shall serve a copy of each such objection upon the holder of the Claim to which such objection pertains ("Disputed or Undetermined Claim"). Unless arising from an Avoidance Action, any Proof of Claim Filed after the Effective Date shall be of no force and effect and need not be objected to. Any Disputed or Undetermined Claim may be litigated to Final Order. The Disbursing Agent may compromise and settle any disputed or undetermined Claim without the necessity of any further notice or approval of the Bankruptcy Court, and Bankruptcy Rule 9019 shall not apply to any settlement of a disputed or undetermined Claim after the Effective Date.

If an objection to a Claim or portion thereof is filed timely, no payment or distribution provided under the Plan shall be made on account of such Claim or portion thereof unless and until such disputed Claim ("Disputed Claim") becomes an allowed Claim ("Allowed Claim").

### D.     Allowance of Claims.

At the time, and to the extent that a Disputed or Undetermined Claim becomes an Allowed Claim, such Allowed Claim shall be entitled to distributions under the Plan. Such Distributions shall be made in the manner provided for by this Plan, or any Final Order of the Bankruptcy Court

with respect to such Allowed Claim. No distribution will be made on account of a Disputed Claim unless such claim is allowed by a final non-appealable order.

## E.     Distributions After Allowance.

To the extent that a Disputed Claim ultimately becomes an Allowed Claim distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Disputed Interest becomes a Final Order, the Disbursing Agent shall provide to the holder of such Claim or Interest the distribution (if any) to which such holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim unless otherwise required under the Plan or applicable bankruptcy law.

## F.     Distribution Date

The Distribution Date shall be a date selected by the Disbursing Agent to occur within 30 days following the Objection Deadline or such later date a Claim becomes an Allowed Claim. The Disbursing Agent shall reserve the pro rata amount allocable to a Claim that is a Disputed Claim until such Claim becomes an Allowed Claim or Disallowed Claim, as the case may be. Partial Disbursements may occur subject to reserves for expenses and Disputed Claim distributions.

## VI.     EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtor assumes all executory contracts and unexpired leases of the Debtor (the "Assumed Contracts") except for those identified on **Exhibit D** (the "Rejected Contracts"), all of which shall be deemed assumed or rejected as of the Effective Date. The cure amounts (the "Cure Payments") for the Assumed Contracts is set for each contract at $0.00 unless otherwise specified on **Exhibit D.** All Cure Payments shall be made by the Disbursing Agent from the Going Concern Plan Fund on the Distribution Date.

Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the effective date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date. A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan. Unless otherwise rejected before confirmation of the Plan, all unexpired leases and executory contracts of the Debtor, if any, shall be assumed on or before the Effective Date.

The deadline for counterparties to Executory Contracts or Unexpired Leases that have been rejected shall be 30 days after the Effective Date.

# VII.    EFFECT OF CONFIRMATION OF PLAN

## A.    Effective Date and Notice.

The Effective Date of the Plan is the first business day following the date that is 30 days after the entry of the order confirming the Plan becomes final and non-appealable; provided however, if an appeal of the order confirming the Plan has been taken and a stay of confirmation pending appeal in effect, the Effective Date will be the first business day after the date on which the stay expires or is otherwise terminated.

On or before ten (10) Business Days after the occurrence of the Effective Date, the Debtors shall mail (or transmit via electronic mail if available) to all holders of Claims and Equity Interests a notice that informs such holders of the following: (a) entry of the Confirmation Order; (b) occurrence of the Effective Date; and (c) such other matters that Debtors deems appropriate.

## B.    Binding Effect of Plan.

Upon the Effective Date, the Plan and each of its provisions shall be binding on the Debtor, all Creditors, all Interest holders, and all Persons acquiring property under the Plan, whether or not they voted to accept the Plan, whether or not they had a right to vote on the Plan, whether or not any Claim or Interest held by any of them is Impaired under the Plan, whether or not any Claim or Interest held by any of them is Allowed in full, only in part, or Disallowed in full, and whether or not a Distribution is made to any of them under the Plan. This provision includes all successors and assigns of the parties named herein.

## C.    Vesting of Assets.

Upon the Effective Date, all assets of the Estate shall vest in the Debtor, except as otherwise provided in the Plan.

## D.    Discharge.

A consensual plan is one in which the Debtor has met all requirements of § 1129(a) of the Bankruptcy Code except for paragraph (15) but including having all classes of creditors entitled to vote to accept the Plan. If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; or (ii) to the extent provided in § 1141(d)(6).

A non-consensual plan is one in which the Debtor has met all requirements of § 1129(a) of the Bankruptcy Code except for paragraphs (8), (10), and (15) of section 1129. If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt: (i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure. Here, the Reorganized Debtor will be discharged upon Substantial Consummation.

**NOTICE:** In the event (a) the Court determines at confirmation that this Plan is a nonconsensual plan under Section 1191(b) and a discharge cannot be issued until 36 months from the Effective Date or (b) the Debtor makes an election under this provision prior to the Confirmation Hearing, this Plan shall be modified as follows: (a) no Plan Notes shall be issued; (b) payments on Allowed Claims pursuant to Classes 3 and 4 shall be made to the extent of net disposable income available for distribution pursuant to the projections set forth in **Exhibit B;** (c) the Chapter 7 Trustee shall be the Disbursing Agent under the Plan over the totality of the payments contemplated under this Plan.

**E.    Injunction Against Interference with Plan.**

Upon the Effective Date, all holders of Claims and all other parties in interest in the Bankruptcy Case, along with their respective current and former officers, directors, principals, employees and agents, shall be and are hereby enjoined from taking any action to interfere with the implementation or consummation of the Plan. Additionally, all holders of Claims, all holders of Equity Interest, and all other parties in interest in the Bankruptcy Case shall be enjoined from seeking payment on their Claims or Interest except as otherwise provided in the Plan from Debtor.

**F.    Payments under the Plan.**

Regardless, if the Debtor obtains confirmation the Plan pursuant to § 1191(a) or (b) of the Bankruptcy Code, the Disbursing Agent shall make all payments required under the Plan directly to the creditors of the Estate once the creditors' claim becomes an Allowed Claim. Debtor asserts that cause exists to allow the Disbursing Agent to make all Plan payments as this will reduce administrative costs and provide assurance the Debtor is better able to monitor and maintain its cash flows.

## VIII.    ALTERNATIVES TO DEBTOR'S PLAN

If the Debtor's Plan is not confirmed, the Debtor's bankruptcy case may be converted to a case under Chapter 7 of the Code, in which case a trustee would be appointed to liquidate the assets of the Debtor for distribution to its Creditors in accordance with the priorities of the Code. Generally, a liquidation or forced sale yields a substantially lower amount. In this case, the Debtors anticipate there would be no funds available for distributions to unsecured creditors. As set forth above, the Debtor will owe an estimated approximately $106,000 in administrative claims. Claims to the administrative creditors must be paid prior to the unsecured creditors receiving any payment. The amount owed to the unsecured creditors is in the range of $5.6MM to $14MM. Administrative creditors must be paid before unsecured debts, and therefore, a liquidation would result in a smaller distribution to the unsecured creditors.

The Debtor has investigated may alternative sales of assets under 11 U.S.C. § 363 and other business alternatives to the Plan, including purchases of the Debtor on more lucrative terms, but none have been found or known.

A liquidation analysis is attached hereto as **Exhibit C.**

# IX. MISCELLANEOUS

## A. Qualification of Representations

**NO REPRESENTATIONS CONCERNING THE DEBTOR ARE AUTHORIZED BY THE DEBTOR OTHER THAN THOSE SET FORTH IN THIS PLAN. THE DEBTOR RECOMMENDS THAT ANY REPRESENTATION OR INDUCEMENT MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN WHICH IS NOT CONTAINED IN THIS PLAN SHOULD NOT BE RELIED UPON BY YOU IN REACHING YOUR DECISION ON HOW TO VOTE ON THE PLAN. ANY REPRESENTATION OR INDUCEMENT MADE TO YOU NOT CONTAINED HEREIN SHOULD BE REPORTED TO THE ATTORNEYS FOR DEBTOR WHO SHALL DELIVER SUCH INFORMATION TO THE COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.**

**ANY BENEFITS OFFERED TO THE CREDITORS ACCORDING TO THE PLAN WHICH MAY CONSTITUTE "SECURITIES" HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE FEDERAL SECURITIES AND EXCHANGE COMMISSION ("SEC"), THE TEXAS SECURITIES BOARD, OR ANY OTHER RELEVANT GOVERNMENTAL AUTHORITY IN ANY STATE OF THE UNITED STATES. IN ADDITION, NEITHER THE SEC, NOR ANY OTHER GOVERNMENTAL AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS PLAN. ANY REPRESENTATIONS TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.**

**THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS INTO THE FUTURE WITH ACCURACY, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS COMPLETELY ACCURATE, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE. THE APPROVAL BY THE COURT OF THIS PLAN DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.**

**THE DEBTOR BELIEVES THAT THE PLAN WILL PROVIDE CLAIMANTS WITH AN OPPORTUNITY ULTIMATELY TO RECEIVE MORE THAN THEY WOULD RECEIVE IN A LIQUIDATION OF THE DEBTOR'S ASSETS AND SHOULD BE ACCEPTED. CONSEQUENTLY, THE DEBTOR URGES THAT CLAIMANTS VOTE FOR THE PLAN.**

**DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN**

**MADE TO BE ACCURATE. THE STATEMENTS CONTAINED IN THIS PLAN ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN.**

**B.      Retention of Jurisdiction**

The Bankruptcy Court's jurisdiction to enforce or interpret this Plan shall be retained under the Plan.

**C.      Events of Default and Effect Thereof**

Any creditor remedies allowed by 11 U.S.C. § 1112(b)(4)(N) shall be preserved to the extent otherwise available at law. Any default notice, inquiry, or other formal communication pursuant to the Plan shall be mailed by certified mail, return receipt requested to the following:

Richard G. Grant
CMLaw PLLC
National Litigation Support Center
13101 Preston Road, Suite 110-1510
Dallas, Texas 75240

and transmitted via electronic mail to rgrant@cm.laws.

**D.      Default Provisions Relating to the Internal Revenue Service**

Default Provision - IRS. Notwithstanding any other provision or term of this Plan or Confirmation Order, the following Default Provision shall control as to the United States of America, Internal Revenue Service ("IRS") and all of its Claims and the IRS Claim:

(1) If the Debtors or Reorganized Debtors fail to pay when due any payment required to be made on federal taxes, Claims of the IRS, the IRS Claim, or other payment required to be made to the IRS under the terms and provisions of this Plan or the Confirmation Order, or fail to timely file any required federal tax return, or if any other Event of Default as defined in the Plan occurs, the IRS shall be entitled to give the Debtors and Reorganized Debtors and their counsel of record written notice of the failure and/or default with demand that it be cured, and if the failure and/or default is not cured within 14 days of said notice and demand, then the following shall apply to the IRS:

(A) The administrative collection powers and the rights of the IRS shall be reinstated as they existed prior to the filing of the bankruptcy petition, including, but not limited to, the assessment of taxes, the filing of a notice of Federal tax lien and the powers of levy, seizure, and as provided under the Internal Revenue Code;

(B) The automatic stay of 11 U.S.C. § 362 and any injunction of this Plan or Confirmation Order shall, with regard to the IRS only, lift without further notice or hearing by the Court, and the entire imposed liability owed to the IRS, together with any unpaid current liabilities, may become due and payable immediately; and

(C) The IRS shall have the right to proceed to collect from the Debtors or the Reorganized Debtors any of the pre-petition tax liabilities and related penalties and interest through administrative or judicial collection procedures available under the United States Code as if no bankruptcy petition had been filed and as if no plan had been confirmed.

(2) Failure of the IRS to declare a failure and/or default does not constitute a waiver by the United States of the right to declare that the Debtors or Reorganized Debtors are in default.

(3) The IRS shall only be required to send two notices of failure and/or default, and upon the third event of a failure and/or default the IRS shall be entitled to proceed as set out in paragraphs (A), (B), and/or (C) herein above without further notice to the Debtors, the Reorganized Debtors, or their counsel.

(4) The Internal Revenue Service shall not be bound by any release provisions in the Plan that would release any liability of the responsible persons of the Debtors to the IRS.

(5) The term "any payment required to be made on federal taxes," as used in paragraph (h)(1) herein above, is defined as: any payment or deposit required by the Tax Code to be made by the Reorganized Debtors from the Confirmation Date to the date the IRS Claim is together with interest paid in full. The term "any required tax return," as used in paragraph (h)(1) herein above, is defined as: any tax return or report required by the Tax Code to be made by the Reorganized Debtors from the Confirmation Date to the date the IRS Claim is together with interest paid in full.

E.    <u>Discharge</u>

Upon Confirmation pursuant to 11 U.S.C. §1191(a) to the extent that a Claim or Debt has been dealt with under this Plan, such Claim or Debt will be discharged. Upon confirmation pursuant to 11 U.S.C. § 1191(b) discharge shall occur upon completion of all payments required under this Plan.

The automatic stay imposed by 11 U.S.C. § 362 of the Code or any preliminary injunction granted by the Court to allow for Substantial Consummation of this Plan shall remain in effect until the Effective Date.

Releases of Claims by Holders of Claims: Except as otherwise specifically provided for herein, upon the entry of the Confirmation Order (a) each Person that votes to accept the Plan or is presumed to have voted for the Plan pursuant to Section 1126(f) of the Bankruptcy Code; and (b) to the fullest extent permissible under applicable law, as such law may be extended or interpreted subsequent to the entry of the Confirmation Order, each Entity or Person, that has held, holds, or may hold a Claim or interest (hereinafter a "Release Obligor"), in consideration for the obligations of Debtor, Disbursing Agent and Reorganized Debtor under the Plan and the case, shall have conclusively, absolutely unconditionally, irrevocably and forever, released and discharged the Debtor, Disbursing Agent and Reorganized Debtor from any Claim or claim of action existing as of the entry of the Confirmation Order arising from, based on or relating to, in whole or in part,

the subject matter of, or the transaction or event giving rise to the Claim or claim for relief of such Release Obligor, and any act, omission, occurrence or event in any manner related to such subject matter, transaction or obligation; provided, however, that this provision shall not release Debtor from any cause of action held by a Governmental entity existing as of the entry of the Confirmation Order based (i) the Internal Revenue Code or other domestic state, city or municipal tax code, (ii) the environmental laws of the United States or any domestic state, city or municipality, (iii) any criminal laws of the United States or any domestic state, city or municipality, (iv) the Exchange Act, the Securities Act, or other securities laws of the United States or any domestic state, city or municipality, or (v) Sections 1104-1109 and 1342(d) of the Employee Retirement Income Security act of 1974, as amended.

## F.      Risks to Creditors Under the Debtor's Plan

The risks to Creditors under the Plan include the possible failure of the Purchase to pay the Purchase Price on the Effective Date, which would likely result in conversion to a Chapter 7 and liquidation of the Debtor's assets.

## G.      Tax Consequences to the Debtor

Implementation of the Plan may result in federal income tax consequences to holders of Claims, Equity Interest Holders, and to the Debtor. In this case most of the creditors will not be paid in full the amount of their claims. Tax consequences to a particular Creditor or Equity Interest Holder may depend on the particular circumstances or facts regarding the Claim of the Creditor or the interests of the Equity Interest Holder. **CLAIMANTS ARE URGED TO CONSULT THEIR OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN TO THEM UNDER FEDERAL AND APPLICABLE STATE AND LOCAL TAX LAWS.**

## H.      Pending or Anticipated Litigation

The Debtor has evaluated potential claims which may be brought. The Debtor is not aware of any voidable transfer claims.  The Debtor reserves its claims against Next Science.

## I.      Definitions

Unless the context otherwise requires, the following capitalized terms shall have the meanings indicated when used in this Plan which meaning shall be equally applicable to both the singular and plural forms of such terms. Any term in this Plan that is not defined herein but that is used in title 11, United States Code ("Code") shall have the meaning assigned to such term in the Code.

**"Administrative Claim"** shall mean those Claims entitled to priority under the provisions of Section 507 of the Code, pursuant to a claimed and allowed administrative expense priority under Section 503(b) of the Code.

**"Allowed Claim"** as to all Classes, hereinafter specified, shall mean a Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed

by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code. When "Allowed Claim" is used in the context of a Secured Claim, the provisions of §506(b) of the Code shall also apply.

**"Allowed Secured Claim"** shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby. That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

**"Allowed Unsecured Claim"** shall mean an unsecured Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code.

**"Bar Date"** shall mean the date fixed by the Court as the last date for filing all Claims in this case other than Administrative and Priority Claims or Rejection Claims.

**"Case"** shall mean this Chapter 11 case.

**"Claim"** shall mean any right to payment from the Debtor as of the date of entry of the Order Confirming Plan whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or can be asserted by way of set-off. Claim includes any right or cause of action based on a pre-petition monetary or non-monetary default.

**"Claimant"** shall mean the holder of a Claim.

**"Class"** shall refer to a category of holders of Claims or interests which are "substantially similar" as provided for in Section 1122 of the Code.

**"Code"** shall mean the United States Bankruptcy Code, being title 11 of the United States Code, as enacted in 1978 and thereafter amended.

**"Confirmation"** or **"Confirmation of this Plan"** shall mean entry by the Court of an Order confirming this Plan at or after a hearing pursuant to Section 1129 of the Code.

**"Confirmation Date"** shall mean the date on which the Court enters an Order confirming this Plan.

**"Court"** shall mean the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division, presiding over this Chapter 11 reorganization case, or any successor court of competent jurisdiction.

**"Creditor"** shall mean any person having a Claim against Debtor.

**"Debt"** shall mean any obligation of Debtor, alone, and any obligation of Debtor and any other Person, to any Entity.

**"Debtor"** shall mean the debtor in the above captioned case, that is, Pivotal Med Supply, LLC, a Texas limited liability company.

**"Disbursing Agent"** shall mean the Reorganized Debtor, or in the event of a confirmation under 11 U.S.C. §1191(b) shall mean the Sub-Chapter V Trustee or other entity or person as the Court mandates.

**"Effective Date"** The effective date of this Plan is the first business day following 30-days after the "Confirmation Date," selected by the Debtor as practicable unless an objecting party obtains a stay pending appeal.

**"Entity"** shall include Person, estate trust, governmental unit and the United States Trustee.

**"Going Concern Value Fund"** shall mean a source of funds equal in value to (a) the net present value at a discount rate equal to the Plan Interest Rate of the net disposable income of the Reorganized Debtor over the three year period commencing upon the Effective Date as described in **Exhibit B** less (b) the Liquidation Value Fund.

**"Liquidation Value Fund"** shall mean a source of funds equal in value to the Amount Available to Unsecured Creditors described in the Liquidation Analysis set forth in **Exhibit C** attached hereto.

**"Order Confirming Plan"** shall mean the Order of the Court determining that this Plan meets the requirements of Chapter 11 of the Code and is entitled to confirmation under Chapter 11 of the Code.

**"Plan"** shall mean this Plan of Reorganization in its present form or as it may be amended, modified or supplemented.

**"Plan Interest Rate"** shall mean fifteen percent (15%) per annum.

**"Plan Note"** shall mean an unsecured promissory note in form and substance acceptable to the Debtor in an amount as otherwise set forth herein bearing simple interest per annum at the Plan Interest Rate that may be prepaid in full at any time by the Debtor without penalty. The Plan Note shall have the form of note attached hereto as **Exhibit F.**

**"Priority Claim"** shall mean any Claim entitled to priority pursuant to Section 507(a) of the Code except for Tax Claims and Claims incurred by the Debtor post-petition in the ordinary course of business.

**"Rejection Claim"** shall mean any Claim arising out of the rejection of a lease or executory contract pursuant to Section 365 of the Code, which Claim shall be treated as an Unsecured Claim.

**"Reorganized Debtor"** shall mean the Debtor upon confirmation of the Plan as provided herein.

**"Secured Claim"** shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby. That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

**"Sub-Chapter V Trustee"** shall be that person appointed under 11 U.S.C. §1183, in this case, Katharine Clark.

**"Substantial Consummation"** shall occur upon the Reorganized Debtor's issuance of Plan Notes and the commencement of payments to creditors as provided in this Plan.

**"Tax Claims"** shall mean any Claim entitled to priority under Section 507(a)(8) of the Code and shall include the claims of taxing authorities for taxes owed on the property retained by the Debtor under this Plan.

**"Unsecured Claim"** shall mean any Allowed Claim, whether or not liquidated or contingent other than a Priority Claim, a Tax Claim, or a Secured Claim.

Dated: April 23, 2025                                    Respectfully submitted,

                                                          PIVOTAL MED SUPPLY, LLC, a Texas
                                                          limited liability company


                                                          By: /s/ Noah Seitel
                                                               Noah Seitel, Managing Member

**EXHIBIT A**
**HISTORICAL OPERATING REPORTS**

**Pivotal Med Supply LLC**
**Case No. 25-40248 (Bankr. N.D. Tex.)**
**Income Statement - January 2023 - February 2025**

| Group | Account Group | Name | 2024-01 | 2024-02 | 2024-03 | 2024-04 | 2024-05 | 2024-06 | 2024-07 | 2024-08 | 2024-09 | 2024-10 | 2024-11 | 2024-12 | 2024 Total | 2025-01 | 2025-02 | 2025 Total | Grand Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sales | Revenue | DME Revenue | | | | $ 89,228 | $ 230,006 | $ 346,149 | $ 371,785 | $ 443,003 | $ 727,098 | $ 699,245 | $ 186,950 | $ 34,976 | $ 3,128,440 | $ 806,502 | $ (9,293) | $ 797,209 | $ 3,925,649 |
| | | Buy & Bill Revenue | | $ 850 | $ 675 | $ 975 | $ 900 | | | | | | | | $ 3,568 | | | | $ 3,568 |
| | | Buy & Bill re IVR Revenue | | | | | | $ 1,307 | $ 516 | $ 4,929 | $ 13,952 | $ 10,751 | $ 129,622 | $ 37,993 | $ 199,070 | $ 6,211 | $ 117,517 | $ 123,728 | $ 322,797 |
| | | Hospital Revenue | | | | | | | | $ 3,750 | | | | | $ 3,750 | | | | $ 3,750 |
| | | Sales Service Revenue | | | | | | | | | $ 156,935 | $ 181,994 | $ 190,460 | $ 209,978 | $ 739,366 | $ 67,956 | | $ 67,956 | $ 807,322 |
| | | Contra Revenue - Insurance Claim Writeoffs | | | | $ (107,864) | $ (235,045) | $ (224,609) | $ (210,086) | $ (195,164) | $ (379,190) | $ (72,773) | $ (27,353) | $ (9,982) | $ (1,462,066) | $ (33,328) | $ 49,546 | $ 16,218 | $ (1,445,848) |
| Sales Total | Revenue Total | | | $ 850 | $ 675 | $ (17,661) | $ (4,139) | $ 122,847 | $ 162,216 | $ 256,517 | $ 518,794 | $ 819,217 | $ 479,679 | $ 273,133 | $ 2,612,128 | $ 847,341 | $ 157,770 | $ 1,005,111 | $ 3,617,239 |
| | | | | $ 850 | $ 675 | $ (17,661) | $ (4,139) | $ 122,847 | $ 162,216 | $ 256,517 | $ 518,794 | $ 819,217 | $ 479,679 | $ 273,133 | $ 2,612,128 | $ 847,341 | $ 157,770 | $ 1,005,111 | $ 3,617,239 |
| COGS | COGS | Product Cost | | $ (525) | $ (16,439) | $ (69,243) | $ (162,408) | $ (111,325) | $ (37,907) | $ 25,380 | $ (21,902) | $ (52,830) | $ (8,272) | $ (32,041) | $ (487,512) | $ 108,790 | $ (51,722) | $ 57,068 | $ (430,445) |
| | | Product Shipping Cost | $ (384) | | $ (21) | $ (2,140) | $ (1,222) | $ (458) | $ (90) | $ (806) | $ (17,108) | $ (15,867) | $ (5,379) | $ (4,952) | $ (48,426) | $ (8,552) | $ (2,573) | $ (11,125) | $ (59,551) |
| | | Direct Costs (should be Zero) | $ – | | $ – | $ – | $ (0) | $ – | $ – | $ – | $ – | $ – | $ – | $ – | $ (0) | $ 58 | $ (2,456) | $ (2,397) | $ (2,397) |
| COGS Total | COGS Total | | $ (384) | $ (525) | $ (16,460) | $ (71,383) | $ (163,631) | $ (111,783) | $ (37,998) | $ 24,575 | $ (39,009) | $ (68,697) | $ (13,651) | $ (36,993) | $ (535,939) | $ 100,295 | $ (56,750) | $ 43,545 | $ (492,393) |
| OPEX | Payroll Expense | Bonus Expense | | $ (1,515) | | | | | | | | $ (15,000) | | $ (20,000) | $ (36,515) | | | | $ (36,515) |
| | | Commission Expense | | | | $ (4,687) | $ (34,801) | $ (47,847) | $ (53,170) | $ (64,589) | $ (53,751) | $ (99,009) | $ (87,716) | $ 85,485 | $ (360,085) | $ (87,555) | $ 75,627 | $ (11,928) | $ (372,013) |
| | | Sales Service Commission Expense | | | | | | | | | $ (112,986) | $ (131,036) | $ (123,813) | $ (141,040) | $ (508,874) | $ (34,949) | $ 395,888 | $ 360,939 | $ (147,935) |
| | | Contract Labor Expense | $ (121,532) | $ (121,532) | $ (126,532) | $ (114,540) | $ (45,553) | $ (117,160) | $ (110,279) | $ (110,022) | $ (68,368) | $ 2,725 | $ (62,914) | $ (37,237) | $ (1,032,942) | $ (62,390) | $ (60,174) | $ (122,564) | $ (1,155,506) |
| | | Employee relocation | | | | | $ (10,132) | | | | | | | | $ (10,132) | | | | $ (10,132) |
| | | Payroll Expense | $ (14,543) | $ (47,856) | $ (83,598) | $ (119,305) | $ (222,985) | $ (178,809) | $ (229,623) | $ (278,989) | $ (289,165) | $ (308,402) | $ (333,495) | $ (339,081) | $ (2,445,852) | $ (280,141) | $ (199,178) | $ (479,318) | $ (2,925,269) |
| | | Payroll Processing Fees | $ (98) | $ (149) | $ (298) | $ (2,012) | $ 1,680 | $ (354) | $ (380) | $ (456) | $ (456) | $ (1,300) | $ (1,314) | $ 452 | $ (4,685) | $ (3,586) | $ (3,053) | $ (6,638) | $ (11,226) |
| | | Payroll Tax | $ (7,592) | $ (12,429) | $ (15,655) | $ (6,902) | $ (19,903) | $ (18,542) | $ (18,573) | $ (27,429) | $ (23,520) | $ (28,995) | $ (27,213) | $ (26,853) | $ (231,603) | $ (29,614) | $ (21,667) | $ (51,281) | $ (282,885) |
| | | Payroll Tax - Sales Service | | | | | | | | | $ (3,632) | $ (7,019) | $ (9,511) | $ (5,553) | $ (25,715) | $ (2,655) | $ 25,696 | $ 23,041 | $ (2,674) |
| | Payroll Expense Total | | $ (143,766) | $ (183,482) | $ (226,085) | $ (247,446) | $ (331,693) | $ (362,712) | $ (412,022) | $ (481,484) | $ (549,879) | $ (588,035) | $ (645,977) | $ (483,825) | $ (4,656,406) | $ (500,888) | $ 213,140 | $ (287,749) | $ (4,944,154) |
| | Employee Benefits | Employee Benefits | | | | | | | | | | | | | $ – | | | | $ – |
| | | 401k Expense | | | | | | | | | $ (344) | $ (5,638) | $ (6,825) | $ 5,283 | $ (2,998) | $ (10,521) | $ 4,142 | $ 4,511 | $ 8,652 | $ (1,868) |
| | | Health Insurance | | | | $ 759 | $ (15,414) | $ (20,481) | $ (38,911) | $ (36,351) | $ (12,684) | $ (38,251) | $ (32,446) | $ (32,465) | $ (226,244) | $ (35,061) | $ (29,599) | $ (64,659) | $ (290,903) |
| | Employee Benefits Total | | | | | $ 759 | $ (15,414) | $ (20,481) | $ (38,911) | $ (36,695) | $ (18,322) | $ (45,076) | $ (27,162) | $ (35,463) | $ (236,764) | $ (30,919) | $ (25,088) | $ (56,007) | $ (292,771) |
| | Professional Fees | Employee Recruiting Fees | | | | | | $ (43,500) | | | $ (30,000) | | | | $ (73,500) | | | | $ (73,500) |
| | | Professional Fees | $ – | | $ (9,583) | $ (0) | $ 0 | $ (0) | $ (0) | $ 0 | $ (0) | $ 20,000 | $ 29,583 | $ – | $ – | | $ (12) | $ (12) | $ (14,251) |
| | | Other Professional Fees | $ (50) | | | $ (485) | $ (212) | $ (1,150) | $ (135) | $ (10,182) | $ (585) | $ (375) | | $ 100 | $ (13,070) | $ (993) | $ (189) | $ (1,182) | $ (14,251) |
| | | Legal Fees | | | | $ (8,525) | $ (10,000) | $ (12,022) | $ (12,176) | $ (109,727) | $ (57,565) | $ (22,139) | $ (17,251) | $ (20,253) | $ (269,658) | $ (4,738) | $ (15,560) | $ (20,298) | $ (289,956) |
| | | Accounting Fees | | | | | | | | $ (1,500) | $ (96) | $ (696) | $ (96) | $ (74) | $ (2,461) | $ (581) | $ (66) | $ (647) | $ (3,109) |
| | Professional Fees Total | | $ (50) | | $ (9,583) | $ (9,010) | $ (10,212) | $ (13,172) | $ (35,611) | $ (121,409) | $ (108,241) | $ 6,374 | $ (17,347) | $ (20,227) | $ (358,689) | $ (6,312) | $ (15,814) | $ (22,126) | $ (380,815) |
| | Travel & Entertainment | Airfare | $ (1,270) | $ (12,139) | $ (8,097) | $ (6,668) | $ (11,863) | $ (19,487) | $ (13,593) | $ (18,060) | $ 9,541 | $ (9,593) | $ (6,414) | $ (7,393) | $ (104,997) | $ (2,567) | $ (2,013) | $ (4,580) | $ (109,577) |
| | | Auto Expense | | $ (536) | $ (4,026) | $ (10,989) | $ (16,272) | $ (15,554) | $ (9,907) | $ (15,322) | $ (4,102) | $ (12,460) | $ (8,843) | $ (10,033) | $ (111,244) | $ (10,698) | $ (1,385) | $ (12,083) | $ (123,327) |
| | | Client Meals - No provider present | | | | | | | $ (3,087) | $ (4,136) | $ (3,931) | $ (6,069) | $ (2,419) | $ (3,094) | $ (22,737) | $ (1,165) | $ (194) | $ (1,359) | $ (24,096) |
| | | Gas | $ (408) | $ – | $ (472) | $ (89) | $ (180) | $ (84) | $ (84) | $ (2,147) | $ (3,313) | $ (5,888) | $ (4,820) | $ (4,853) | $ (22,337) | $ (2,262) | $ (1,082) | $ (3,345) | $ (25,682) |
| | | Ground Transportation | $ (51) | $ (1,159) | $ (1,142) | $ (2,055) | $ (2,889) | $ (4,479) | $ (6,873) | $ (7,783) | $ 11,221 | $ (2,207) | $ (1,885) | $ (2,232) | $ (21,535) | $ (895) | $ (484) | $ (1,380) | $ (22,915) |
| | | Hotel/Lodging | | $ (9,266) | $ (6,318) | $ (6,246) | $ (9,705) | $ (22,598) | $ (9,373) | $ (20,532) | $ (11,807) | $ (1,887) | $ (4,350) | $ (7,298) | $ (109,378) | $ (1,771) | $ (1,858) | $ (3,629) | $ (113,007) |
| | | Meals and Entertainment (100%) | | $ (3,265) | $ (3,290) | $ (7,942) | $ (8,698) | $ (4,839) | $ (2,820) | $ (10,631) | $ (2,677) | $ (4,555) | $ (2,750) | $ (4,553) | $ (56,019) | $ (805) | $ (1,049) | $ (1,854) | $ (57,873) |
| | | Provider Meals and Entertainment (50%) | | | $ (3,052) | $ (5,826) | $ (15,741) | $ (6,828) | $ (8,004) | $ (15,734) | $ (12,171) | $ (15,296) | $ (16,719) | $ (13,605) | $ (112,977) | $ (4,967) | $ (2,266) | $ (7,233) | $ (120,210) |
| | | Travel | | $ (14,968) | $ (14,029) | $ (10,986) | $ (21,929) | $ (2,771) | $ (1,176) | $ (2,352) | $ (2,256) | $ – | | | $ (112) | $ (70,579) | | | | $ (70,579) |
| | Travel & Entertainment Total | | $ (1,730) | $ (41,332) | $ (40,426) | $ (50,800) | $ (87,273) | $ (76,640) | $ (54,917) | $ (96,698) | $ (19,497) | $ (64,154) | $ (44,200) | $ (56,136) | $ (631,803) | $ (25,130) | $ (10,332) | $ (35,462) | $ (667,265) |
| | Marketing Expense | Advertising & Marketing | | $ (1,213) | $ (3,648) | $ (915) | $ (1,343) | $ (1,558) | $ (2,885) | $ (4,657) | $ (3,642) | $ (2,192) | $ (2,785) | $ (1,155) | $ (25,991) | $ (2,776) | $ (690) | $ (3,466) | $ (29,457) |
| | | Samples | | | $ (240) | $ (1,440) | | $ (5,000) | $ (6,300) | $ (1,596) | $ (7,121) | $ (240) | | | $ (21,938) | | | | $ (21,938) |
| | Marketing Expense Total | | | $ (1,213) | $ (3,888) | $ (2,355) | $ (1,343) | $ (6,558) | $ (9,185) | $ (6,253) | $ (10,763) | $ (2,432) | $ (2,785) | $ (1,155) | $ (47,928) | $ (2,776) | $ (690) | $ (3,466) | $ (51,394) |
| | Office expense | Office Supplies | $ (87) | $ (1,704) | $ (726) | $ (579) | $ (252) | $ (1,420) | $ (3,318) | $ (3,855) | $ (4,594) | $ (4,608) | $ (4,984) | $ (4,626) | $ (30,753) | $ (1,716) | $ (1,232) | $ (2,948) | $ (33,701) |
| | | Internet & TV | $ (60) | $ (60) | $ (60) | $ (60) | $ (148) | $ (64) | | | | | | | $ (965) | | | | $ (965) |
| | | Shipping & Freight | $ (44) | | $ (81) | | $ (1,017) | $ (409) | $ (423) | $ (4,513) | $ (6,654) | $ (665) | $ (235) | $ (1,420) | $ (296) | $ (83) | $ (379) | $ (14,399) |
| | Office expense Total | | $ (87) | $ (1,747) | $ (726) | $ (640) | $ (252) | $ (2,437) | $ (3,727) | $ (4,278) | $ (9,107) | $ (11,262) | $ (5,649) | $ (4,861) | $ (44,773) | $ (2,011) | $ (1,316) | $ (3,327) | $ (48,100) |
| G&A | Bank Fees | Bank Fees & Service Charges | | | | $ (12) | $ (5) | $ (42) | $ (145) | $ (744) | $ (1,756) | $ (2,813) | $ (2,369) | $ (2,786) | $ (10,673) | $ (947) | $ (337) | $ (1,285) | $ (11,957) |
| | Bank Fees Total | | | $ – | $ – | $ (12) | $ (5) | $ (42) | $ (145) | $ (744) | $ (1,756) | $ (2,813) | $ (2,369) | $ (2,786) | $ (10,673) | $ (947) | $ (337) | $ (1,285) | $ (11,957) |
| | Rent & Utilities | Electric | $ (169) | $ (173) | $ (307) | $ (144) | $ (145) | $ (249) | $ (297) | $ (579) | $ (1,094) | $ (963) | $ (824) | $ (808) | $ (5,753) | $ (961) | $ (847) | $ (1,807) | $ (7,560) |
| | | Internet & TV | $ (60) | $ (60) | $ (60) | $ (60) | $ (148) | $ (64) | | | | | | | $ (965) | | | | $ (965) |
| | | Lease Expense | $ (5,031) | $ (5,400) | $ (5,400) | $ (5,400) | $ (9,650) | $ (5,400) | $ (9,900) | $ (20,368) | $ (11,228) | $ (18,518) | $ (29,508) | $ (28,733) | $ (154,536) | $ (10,669) | $ (19,593) | $ (30,262) | $ (184,799) |
| | | Telephone expense | $ (58) | | $ (765) | | $ (219) | $ (474) | $ (2,253) | $ (6,099) | $ (1,164) | $ (674) | $ (1,099) | $ (12,603) | $ (874) | $ (176) | $ (1,052) | $ (13,655) |
| | Rent & Utilities Total | | $ (5,319) | $ (5,633) | $ (7,076) | $ (5,604) | $ (9,943) | $ (5,932) | $ (10,671) | $ (23,200) | $ (18,420) | $ (20,644) | $ (31,003) | $ (41,940) | $ (174,087) | $ (12,504) | $ (20,618) | $ (33,122) | $ (207,209) |
| | IT Expenses | Computer Hardware | | | | | $ (1,766) | | $ (2,881) | $ (99) | | $ (1,134) | | | $ (5,880) | | | | $ (5,880) |
| | | IT Hardware | | | | | | | | | | | | | $ – | | | | $ – |
| | | Software | $ (235) | $ (2,083) | $ (2,975) | $ (5,303) | $ (7,240) | $ (8,907) | $ (39,175) | $ (9,841) | $ (10,433) | $ (13,313) | $ (14,194) | $ (12,496) | $ (126,195) | $ (11,917) | $ (12,042) | $ (23,959) | $ (150,154) |
| | IT Expenses Total | | $ (235) | $ (2,083) | $ (2,975) | $ (5,303) | $ (9,006) | $ (8,907) | $ (42,056) | $ (9,940) | $ (10,433) | $ (14,447) | $ (14,194) | $ (12,496) | $ (132,075) | $ (11,917) | $ (12,042) | $ (23,959) | $ (156,034) |
| | Licensing Expenses | Business License Expense | | $ (720) | $ (8,426) | $ (8) | | | $ (4,000) | | | | $ (325) | $ (49) | | $ (29,751) | $ (153) | $ (867) | $ (1,021) | $ (30,772) |
| | | Vendor Credentialing Expense | | | | | | | $ (449) | $ (489) | | $ (9,190) | $ (7,455) | | $ (1,312) | $ (385) | | $ (385) | $ (1,697) |
| | Licensing Expenses Total | | | $ (720) | $ (8,426) | $ (8) | | | $ (4,449) | $ (489) | | $ (9,190) | $ (325) | $ (7,455) | | $ (31,063) | $ (538) | $ (867) | $ (1,406) | $ (32,468) |
| | Office expense | Cleaning Service | $ (325) | | | | | | | | | | | | $ (325) | | | | $ (325) |
| | Office expense Total | | $ (325) | | | | | | | | | | | | $ (325) | | | | $ (325) |
| | Repairs and Maintenance Expense | Repair and Maintenance | | $ (295) | | $ (200) | $ – | | $ (1,520) | $ (13,553) | | | | | $ (15,567) | $ (721) | | $ (721) | $ (16,288) |
| | Repairs and Maintenance Expense Total | | | $ (295) | | $ (200) | $ – | | $ (1,520) | $ (13,553) | | | | | $ (15,567) | $ (721) | | $ (721) | $ (16,288) |
| | Depreciation & Amortization | Amortization expense | $ (24,832) | | $ (9,312) | $ (3,104) | $ (3,104) | | | | | $ 40,352 | | | $ (3,413) | | | | $ (3,413) |
| | | Depreciation expense | | | | | | | | | $ (23,614) | $ (2,486) | $ (2,486) | $ (2,486) | $ (31,073) | $ (3,693) | $ (1,280) | $ (4,973) | $ (36,046) |
| | Depreciation & Amortization Total | | $ (24,832) | | $ (9,312) | $ (3,104) | $ (3,104) | | | | $ 16,738 | $ (2,486) | $ (2,486) | $ (2,486) | $ (31,073) | $ (3,693) | $ (1,280) | $ (4,973) | $ (36,046) |
| | Other Income & Expenses | Other expense | | $ 450 | $ (1,133) | $ (0) | $ (3) | $ (4,289) | $ (4,440) | $ (2,817) | $ 5,994 | $ 2,845 | | | $ (3,413) | | | | $ (3,413) |
| | Other Income & Expenses Total | | | $ 450 | $ (1,133) | $ (0) | $ (3) | $ (4,289) | $ (4,440) | $ (2,817) | $ 5,994 | $ 2,845 | | | $ (3,413) | | | | $ (3,413) |
| G&A Total | | | $ (30,710) | $ (8,281) | $ (28,922) | $ (14,030) | $ (22,282) | $ (19,170) | $ (63,280) | $ (50,743) | $ (17,066) | $ (37,071) | $ (57,510) | $ (40,409) | $ (398,275) | $ (30,320) | $ (35,145) | $ (65,465) | $ (463,740) |
| Grand Total | | | $ (176,727) | $ (235,730) | $ (325,415) | $ (412,567) | $ (636,239) | $ (490,104) | $ (513,634) | $ (516,460) | $ (253,090) | $ 14,064 | $ (138,603) | $ (413,936) | $ (4,298,449) | $ 349,280 | $ 225,774 | $ 575,053 | $ (3,723,395) |

**Pivotal Med Supply LLC**
**Case No. 25-40248 (Bankr. N.D. Tex.)**
**Balance Sheet - Sept 2024 - February 2025**

| | 2024-09 | 2024-10 | 2024-11 | 2024-12 | 2025-01 | 2025-02 |
|---|---|---|---|---|---|---|
| **Assets** | $ 1,177,651 | $ 1,696,854 | $ 1,715,282 | $ 1,739,536 | $ 2,414,749 | $ 2,109,577 |
| **Current Assets** | $ 817,329 | $ 1,250,711 | $ 1,267,257 | $ 1,270,281 | $ 1,885,973 | $ 1,582,780 |
| **Bank Accounts** | $ 9,425 | $ 150,540 | $ 31,438 | $ 128,311 | $ 249,259 | $ 211,821 |
| Pinnacle - 1367 - Operating Account | $ 9,425 | $ 130,930 | $ 26,819 | $ 125,940 | $ 5,518 | $ 34,094 |
| Pinnacle - 2883 - Deposit Account | $ - | $ 19,610 | $ 4,619 | $ 2,371 | $ 243,741 | $ 177,727 |
| **Accounts Receivable** | $ 520,262 | $ 694,137 | $ 802,644 | $ 750,420 | $ 1,200,617 | $ 962,374 |
| Accounts Receivable | $ 520,262 | $ 694,137 | $ 802,644 | $ 750,420 | $ 1,200,617 | $ 962,374 |
| Contra A/R - Charge adjustment to net | $ (360,040) | $ (266,693) | $ (267,469) | $ (270,987) | $ (370,144) | $ (290,517) |
| Other Receivables | $ 37,849 | $ (104,122) | $ 62,835 | $ 83,896 | $ 31,713 | $ 52,237 |
| Allowance for Doubtful Accounts | $ - | $ - | $ - | $ - | $ - | $ - |
| Accounts Receivable - Sales Service | $ 156,935 | $ 181,994 | $ 190,460 | $ 209,978 | $ 361,925 | $ 381,341 |
| **Inventory** | $ 273,388 | $ 265,836 | $ 258,358 | $ 262,640 | $ 373,216 | $ 328,210 |
| Roswell Rd Inventory | $ 496,532 | $ 502,026 | $ 532,729 | $ 649,976 | $ 889,873 | $ 851,980 |
| Inventory Interim | $ (263,840) | $ (373,558) | $ (402,444) | $ (461,810) | $ (563,134) | $ (563,051) |
| Southlake Inventory | $ 40,696 | $ 137,368 | $ 128,073 | $ 74,474 | $ 46,477 | $ 39,281 |
| In- Transit Inventory | $ - | $ - | $ - | $ - | | |
| **Other Current Assets** | $ 14,255 | $ 140,198 | $ 174,816 | $ 128,911 | $ 62,881 | $ 80,374 |
| Unearned Revenue | $ - | $ 125,942 | $ 160,561 | $ 114,655 | $ 48,626 | $ 66,119 |
| Security Deposit | $ 14,255 | $ 14,255 | $ 14,255 | $ 14,255 | $ 14,255 | $ 14,255 |
| **Other Current Assets** | $ (398) | $ 3,552 | $ (1,998) | $ 7,201 | $ 22,169 | $ 19,116 |
| Prepaid Expenses | $ (398) | $ 3,552 | $ (1,998) | $ 7,201 | $ 22,169 | $ 19,116 |
| Prepaid Expense | $ (398) | $ 3,552 | $ (1,998) | $ 7,201 | $ 22,169 | $ 19,116 |
| **Other Assets** | $ 360,720 | $ 442,592 | $ 450,024 | $ 462,053 | $ 506,607 | $ 507,681 |
| Fixed Assets | 177,308 | 174,821 | 172,335 | 169,848 | 166,155 | 164,875 |
| Furniture & Fixtures | 50,932 | 50,932 | 50,932 | 50,932 | 50,932 | 50,932 |
| Accumulated Depreciation | (23,614) | (26,100) | (28,587) | (31,073) | (34,766) | (36,046) |
| Computer Hardware | 72,389 | 72,389 | 72,389 | 72,389 | 72,389 | 72,389 |
| Leasehold Improvements | 77,600 | 77,600 | 77,600 | 77,600 | 77,600 | 77,600 |
| Accumulated Amortization | - | - | - | - | - | - |
| Intercompany Asset | 183,413 | 267,771 | 277,689 | 292,205 | 340,452 | 342,805 |
| Due To/From - Biovotec | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 |
| Due To/From - Fab Five Freddy | 39,108 | 39,108 | 44,961 | 46,324 | 47,269 | 47,269 |
| Due To/From - Summit Product Group | 17,653 | 17,653 | 17,653 | 17,653 | 17,653 | 17,653 |
| Due To/From - Vista DME | - | 499 | 499 | 499 | 1,111 | 3,241 |
| Due To/From - Xlta | 26,651 | 110,510 | 114,576 | 127,729 | 174,419 | 174,643 |
| **Liabilities** | $ (4,900,453) | $ (5,405,592) | $ (5,762,623) | $ (6,200,813) | $ (6,526,746) | $ (5,995,801) |
| **Current Liabilities** | $ (885,041) | $ (912,461) | $ (997,975) | $ (1,073,070) | $ (1,032,514) | $ (1,203,820) |
| Current Liabilities | $ (885,041) | $ (912,461) | $ (997,975) | $ (1,073,070) | $ (1,032,514) | $ (1,203,820) |
| Accounts Payable | $ (753,124) | $ (758,467) | $ (848,538) | $ (855,388) | $ (846,598) | $ (927,659) |
| Amex payable | $ (131,608) | $ (153,685) | $ (144,905) | $ (161,994) | $ (185,606) | $ (99,410) |
| Health Insurance Payable | $ - | $ - | $ - | $ - | $ - | $ (0) |
| Sales tax payable | $ (309) | $ (309) | $ (309) | $ (309) | $ (309) | $ (309) |
| Payable Under DIP Agreement - Greg See | $ - | $ - | $ - | $ - | $ - | $ (89,108) |
| Payroll Clearing Account | $ 0 | $ 0 | $ (0) | $ (4,223) | $ (55,379) | $ (87,334) |
| **Other Current Liability** | $ (331,796) | $ (459,516) | $ (561,032) | $ (616,154) | $ (682,643) | $ 19,608 |
| Other Current Liability | $ (331,796) | $ (459,516) | $ (561,032) | $ (616,154) | $ (682,643) | $ 19,608 |
| Accrued Commission | $ (206,822) | $ (303,018) | $ (280,397) | $ (168,198) | $ (220,085) | $ 22,063 |
| Accrued Commissions - Sales Service | $ (112,986) | $ (131,036) | $ (254,848) | $ (395,888) | $ (430,837) | $ - |
| Accrued Expenses | $ (3,202) | $ (1,352) | $ (1,352) | $ (1,352) | $ (1,352) | $ - |
| Reimbursement Clearing | $ - | $ - | $ - | $ (23,600) | $ - | $ (55) |
| Payroll Taxes Payable | $ (3,632) | $ (10,651) | $ (20,162) | $ (25,715) | $ - | $ - |

| | | | | | | |
|---|--:|--:|--:|--:|--:|--:|
| Accrued Tax - Sales Service | $ - | $ - | $ - | $ - | $ (28,370) | $ - |
| 401K Payable | $ (5,175) | $ (10,600) | $ - | $ - | $ - | $ - |
| Garnishment Payable | $ - | $ (2,859) | $ (4,273) | $ (1,400) | $ (2,000) | $ (2,400) |
| **Intercompany Liabilities** | **$ (3,683,615)** | **$ (4,033,615)** | **$ (4,203,615)** | **$ (4,511,589)** | **$ (4,811,589)** | **$ (4,811,589)** |
| Intercompany Liabilities | $ (3,683,615) | $ (4,033,615) | $ (4,203,615) | $ (4,511,589) | $ (4,811,589) | $ (4,811,589) |
| Due To/From - EPSFL | $ - | $ - | $ - | $ - | $ - | $ - |
| Due To/From - Total Ancillary Management | $ - | $ 0 | $ (0) | $ (0) | $ (0) | $ (0) |
| Due To/From - Greg See | $ (1,892,052) | $ (2,092,052) | $ (2,137,052) | $ (2,405,025) | $ (2,455,025) | $ (2,455,025) |
| Due To/From - Noah Sietel | $ (1,791,563) | $ (1,941,563) | $ (2,066,563) | $ (2,106,563) | $ (2,356,563) | $ (2,356,563) |
| **Equity** | **$ 3,722,802** | **$ 3,708,738** | **$ 4,047,341** | **$ 4,461,277** | **$ 4,111,997** | **$ 3,886,224** |
| **Equity** | **$ 3,722,802** | **$ 3,708,738** | **$ 4,047,341** | **$ 4,461,277** | **$ 4,111,997** | **$ 3,886,224** |
| 2023 Retained Earnings | $ 162,828 | $ 162,828 | $ 162,828 | $ 162,828 | $ 162,828 | $ 162,828 |
| 2024 Retained Earnings | $ 3,306,884 | $ 3,559,974 | $ 3,545,910 | $ 3,884,513 | $ 4,298,449 | $ 3,949,169 |
| Current Month Net Income | $ 253,090 | $ (14,064) | $ 338,603 | $ 413,936 | $ (349,280) | $ (225,774) |
| Contributions & Distributions | $ - | $ - | $ - | $ - | $ - | $ - |
| Paid In Capital | $ - | $ - | $ - | $ - | $ - | $ - |
| **Check Figure** | **$ 0** | **$ 0** | **$ 0** | **$ 0** | **$ 0** | **$ 0** |

**EXHIBIT B**
**FINANCIAL PROJECTIONS**

**Pivotal Med Supply LLC**
**Case No. 25-40248 (Bankr. N.D. Tex.)**
**36 Month Forecast**

| | Growth Rate | 6% | 6% | 6% | 6% | 6% | 6% | 6% | 6% | 6% | 6% | 6% | 9% | 9% |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Month 1 | Month 2 | Month 3 | Month 4 | Month 5 | Month 6 | Month 7 | Month 8 | Month 9 | Month 10 | Month 11 | Month 12 | Month 13 | Month 14 |
| DME Revenue (Net of Contractuals) | $ 140,000 | $ 148,400 | $ 157,304 | $ 166,742 | $ 176,747 | $ 187,352 | $ 198,593 | $ 210,508 | $ 223,139 | $ 236,527 | $ 250,719 | $ 265,762 | $ 289,680 | $ 315,752 |
| Sales Service Revenue | $ 155,050 | $ 158,151 | $ 161,314 | $ 164,540 | $ 167,831 | $ 171,188 | $ 174,611 | $ 178,104 | $ 181,666 | $ 185,299 | $ 189,005 | $ 192,785 | $ 196,641 | $ 200,574 |
| **Gross Revenue** | 295,050 | 306,551 | 318,618 | 331,283 | 344,578 | 358,539 | 373,204 | 388,612 | 404,805 | 421,826 | 439,724 | 458,547 | 486,321 | 516,325 |
| COGS | $ (37,800) | $ (40,068) | $ (42,472) | $ (45,020) | $ (47,722) | $ (50,585) | $ (53,620) | $ (56,837) | $ (60,247) | $ (63,862) | $ (67,694) | $ (71,756) | $ (78,214) | $ (85,253) |
| Commissions | $ (43,400) | $ (46,004) | $ (48,764) | $ (51,690) | $ (54,792) | $ (58,079) | $ (61,564) | $ (65,258) | $ (69,173) | $ (73,323) | $ (77,723) | $ (82,386) | $ (89,801) | $ (97,883) |
| Sales Service Commissions | $ (38,763) | $ (39,538) | $ (40,329) | $ (41,135) | $ (41,958) | $ (42,797) | $ (43,653) | $ (44,526) | $ (45,416) | $ (46,325) | $ (47,251) | $ (48,196) | $ (49,160) | $ (50,143) |
| Salaries | $ (160,000) | $ (200,000) | $ (200,000) | $ (200,000) | $ (200,000) | $ (200,000) | $ (200,000) | $ (200,000) | $ (200,000) | $ (200,000) | $ (200,000) | $ (160,000) | $ (176,000) | $ (176,000) |
| Tax & Benefit Expense | $ (50,854) | $ (59,964) | $ (60,709) | $ (61,493) | $ (62,317) | $ (63,184) | $ (64,095) | $ (65,055) | $ (66,064) | $ (67,126) | $ (68,245) | $ (61,022) | $ (66,142) | $ (68,046) |
| Professional Fees | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Software Expenses | $ (12,000) | $ (12,720) | $ (13,483) | $ (14,292) | $ (15,150) | $ (16,059) | $ (17,022) | $ (18,044) | $ (19,126) | $ (20,274) | $ (21,490) | $ (22,780) | $ (24,830) | $ (27,064) |
| Rent | $ (19,405) | $ (19,405) | $ (19,405) | $ (19,405) | $ (19,405) | $ (19,405) | $ (19,405) | $ (19,405) | $ (19,405) | $ (19,405) | $ (19,405) | $ (19,405) | $ (21,151) | $ (19,987) |
| Travel & Meals | $ (10,000) | $ (10,600) | $ (11,236) | $ (11,910) | $ (12,625) | $ (13,382) | $ (14,185) | $ (15,036) | $ (15,938) | $ (16,895) | $ (17,908) | $ (18,983) | $ (20,691) | $ (22,554) |
| Utilities | $ (1,000) | $ (1,000) | $ (1,000) | $ (1,000) | $ (1,000) | $ (1,000) | $ (1,000) | $ (1,000) | $ (1,000) | $ (1,000) | $ (1,000) | $ (1,000) | $ (1,100) | $ (1,100) |
| **Operating Expenses** | $ (373,222) | $ (429,299) | $ (437,399) | $ (445,946) | $ (454,968) | $ (464,491) | $ (474,545) | $ (485,160) | $ (496,370) | $ (508,210) | $ (520,716) | $ (485,528) | $ (527,089) | $ (548,030) |
| **Net Disposable Income** | **$ (78,172)** | **$ (122,748)** | **$ (118,780)** | **$ (114,664)** | **$ (110,390)** | **$ (105,951)** | **$ (101,340)** | **$ (96,548)** | **$ (91,566)** | **$ (86,384)** | **$ (80,993)** | **$ (26,981)** | **$ (40,768)** | **$ (31,705)** |

15% **Discount Rate**
$912,721.83 **Net Present Value**

Presuming No Further Services of Former NS Employees

| | Month 1 | Month 2 | Month 3 | Month 4 | Month 5 | Month 6 | Month 7 | Month 8 | Month 9 | Month 10 | Month 11 | Month 12 | Month 13 | Month 14 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Decrease in Revenue | $ (76,500) | $ (81,090) | $ (85,955) | $ (91,113) | $ (96,579) | $ (102,374) | $ (108,517) | $ (115,028) | $ (121,929) | $ (129,245) | $ (137,000) | $ (145,220) | $ (158,290) | $ (172,536) |
| Decrease in Sales Service Revenue | $ (155,050) | $ (118,613) | $ (80,657) | $ (41,135) | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Decrease in COGS | $ 20,655 | $ 21,894 | $ 23,208 | $ 24,600 | 26,076 | $ 27,641 | $ 29,300 | $ 31,057 | $ 32,921 | $ 34,896 | $ 36,990 | $ 39,209 | $ 42,738 | $ 46,585 |
| Decrease in Commissions | $ 23,715 | $ 25,138 | $ 26,646 | $ 28,245 | 29,940 | $ 31,736 | $ 33,640 | $ 35,659 | $ 37,798 | $ 40,066 | $ 42,470 | $ 45,018 | $ 49,070 | $ 53,486 |
| Decrease in Sales Service Commissions | $ 38,763 | $ 29,653 | $ 20,164 | $ 10,284 | $ - | | | | | | | | | |
| Decrease in Salary | $ 18,667 | $ 58,667 | $ 58,667 | $ 58,667 | 58,667 | $ 58,667 | $ 58,667 | $ 58,667 | $ 58,667 | $ 58,667 | $ 58,667 | $ 18,667 | $ 19,227 | $ 19,227 |
| Decrease in Tax & Benefits | $ 17,040 | $ 17,599 | $ 17,916 | $ 18,251 | 18,607 | $ 18,985 | $ 19,384 | $ 19,808 | $ 20,258 | $ 20,734 | $ 21,239 | $ 13,374 | $ 14,342 | $ 15,270 |
| Decrease in Travel and Meals | $ 3,600 | $ 3,816 | $ 4,045 | $ 4,288 | 4,545 | $ 4,818 | $ 5,107 | $ 5,413 | $ 5,738 | $ 6,082 | $ 6,447 | $ 6,834 | $ 7,449 | $ 8,119 |
| **Adjusted Net Disposable Income** | **$ (187,282)** | **$ (165,684)** | **$ (134,747)** | **$ (102,577)** | **$ (69,134)** | **$ (66,480)** | **$ (63,760)** | **$ (60,972)** | **$ (58,114)** | **$ (55,184)** | **$ (52,180)** | **$ (49,099)** | **$ (66,232)** | **$ (61,554)** |

15% **Discount Rate**
($1,385,856.00) **Net Present Value**

$2,298,577.83 **Delta in NPV**

**Pivotal Med Supply LLC**
**Case No. 25-40248 (Bankr. N.D. Tex.)**
**36 Month Forecast**

| | 9% | 9% | 9% | 9% | 9% | 9% | 9% | 9% | 9% | 9% | 10% | 10% | 10% |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Month 15 | Month 16 | Month 17 | Month 18 | Month 19 | Month 20 | Month 21 | Month 22 | Month 23 | Month 24 | Month 25 | Month 26 | Month 27 |
| DME Revenue (Net of Contractuals) | $ 344,169 | $ 375,144 | $ 408,907 | $ 445,709 | $ 485,823 | $ 529,547 | $ 577,206 | $ 629,155 | $ 685,779 | $ 747,499 | $ 822,249 | $ 904,474 | $ 994,921 |
| Sales Service Revenue | $ 204,585 | $ 208,677 | $ 212,850 | $ 217,107 | $ 221,450 | $ 225,879 | $ 230,396 | $ 235,004 | $ 239,704 | $ 244,498 | $ 249,388 | $ 254,376 | $ 259,463 |
| **Gross Revenue** | $ 548,754 | $ 583,821 | $ 621,758 | $ 662,817 | $ 707,273 | $ 755,426 | $ 807,602 | $ 864,159 | $ 925,483 | $ 991,997 | $ 1,071,637 | $ 1,158,850 | $ 1,254,384 |
| COGS | $ (92,926) | $ (101,289) | $ (110,405) | $ (120,341) | $ (131,172) | $ (142,978) | $ (155,846) | $ (169,872) | $ (185,160) | $ (201,825) | $ (222,007) | $ (244,208) | $ (268,629) |
| Commissions | $ (106,692) | $ (116,295) | $ (126,761) | $ (138,170) | $ (150,605) | $ (164,160) | $ (178,934) | $ (195,038) | $ (212,591) | $ (231,725) | $ (254,897) | $ (280,387) | $ (308,426) |
| Sales Service Commissions | $ (51,146) | $ (52,169) | $ (53,213) | $ (54,277) | $ (55,362) | $ (56,470) | $ (57,599) | $ (58,751) | $ (59,926) | $ (61,125) | $ (62,347) | $ (63,594) | $ (64,866) |
| Salaries | $ (176,000) | $ (176,000) | $ (176,000) | $ (176,000) | $ (176,000) | $ (176,000) | $ (176,000) | $ (176,000) | $ (176,000) | $ (176,000) | $ (193,600) | $ (193,600) | $ (193,600) |
| Tax & Benefit Expense | $ (70,106) | $ (72,337) | $ (74,755) | $ (77,374) | $ (80,213) | $ (83,292) | $ (86,632) | $ (90,256) | $ (94,189) | $ (98,458) | $ (107,277) | $ (112,892) | $ (119,047) |
| Professional Fees | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Software Expenses | $ (29,500) | $ (32,155) | $ (35,049) | $ (38,204) | $ (41,642) | $ (45,390) | $ (49,475) | $ (53,928) | $ (58,781) | $ (64,071) | $ (70,478) | $ (77,526) | $ (85,279) |
| Rent | $ (19,987) | $ (19,987) | $ (19,987) | $ (19,987) | $ (19,987) | $ (19,987) | $ (19,987) | $ (19,987) | $ (19,987) | $ (19,987) | $ (21,986) | $ (20,587) | $ (20,587) |
| Travel & Meals | $ (24,584) | $ (26,796) | $ (29,208) | $ (31,836) | $ (34,702) | $ (37,825) | $ (41,229) | $ (44,940) | $ (48,984) | $ (53,393) | $ (58,732) | $ (64,605) | $ (71,066) |
| Utilities | $ (1,100) | $ (1,100) | $ (1,100) | $ (1,100) | $ (1,100) | $ (1,100) | $ (1,100) | $ (1,100) | $ (1,100) | $ (1,100) | $ (1,210) | $ (1,210) | $ (1,210) |
| **Operating Expenses** | $ (572,041) | $ (598,129) | $ (626,477) | $ (657,289) | $ (690,784) | $ (727,201) | $ (766,802) | $ (809,871) | $ (856,719) | $ (907,683) | $ (992,535) | $ (1,058,609) | $ (1,132,709) |
| **Net Disposable Income** | $ (23,287) | $ (14,308) | $ (4,720) | $ 5,527 | $ 16,489 | $ 28,225 | $ 40,801 | $ 54,288 | $ 68,764 | $ 84,314 | $ 79,102 | $ 100,241 | $ 121,676 |

15%
$912,721.83

Presuming No Further Services of Former NS

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Decrease in Revenue | $ (188,064) | $ (204,990) | $ (223,439) | $ (243,548) | $ (265,468) | $ (289,360) | $ (315,402) | $ (343,788) | $ (374,729) | $ (408,455) | $ (449,300) | $ (494,230) | $ (543,653) |
| Decrease in Sales Service Revenue | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Decrease in COGS | $ 50,777 | $ 55,347 | $ 60,328 | $ 65,758 | $ 71,676 | $ 78,127 | $ 85,159 | $ 92,823 | $ 101,177 | $ 110,283 | $ 121,311 | $ 133,442 | $ 146,786 |
| Decrease in Commissions | $ 58,300 | $ 63,547 | $ 69,266 | $ 75,500 | $ 82,295 | $ 89,701 | $ 97,775 | $ 106,574 | $ 116,166 | $ 126,621 | $ 139,283 | $ 153,211 | $ 168,533 |
| Decrease in Sales Service Commissions | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Decrease in Salary | $ 19,227 | $ 19,227 | $ 19,227 | $ 19,227 | $ 19,227 | $ 19,227 | $ 19,227 | $ 19,227 | $ 19,227 | $ 19,227 | $ 19,803 | $ 19,803 | $ 19,803 |
| Decrease in Tax & Benefits | $ 16,281 | $ 17,382 | $ 18,583 | $ 19,893 | $ 21,320 | $ 22,875 | $ 24,570 | $ 26,418 | $ 28,432 | $ 30,628 | $ 33,408 | $ 36,333 | $ 39,551 |
| Decrease in Travel and Meals | $ 8,850 | $ 9,647 | $ 10,515 | $ 11,461 | $ 12,493 | $ 13,617 | $ 14,842 | $ 16,178 | $ 17,634 | $ 19,221 | $ 21,144 | $ 23,258 | $ 25,584 |
| **Adjusted Net Disposable Income** | $ (57,917) | $ (54,148) | $ (50,239) | $ (46,182) | $ (41,969) | $ (37,588) | $ (33,029) | $ (28,280) | $ (23,329) | $ (18,161) | $ (35,249) | $ (27,942) | $ (21,721) |

15%
($1,385,856.00)

$2,298,577.83

**Pivotal Med Supply LLC**
**Case No. 25-40248 (Bankr. N.D. Tex.)**

|  |  | 10% | 10% | 10% | 10% | 10% | 10% | 10% | 10% | 10% |  |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **36 Month Forecast** | | | | | | | | | | | |
|  | | Month 28 | Month 29 | Month 30 | Month 31 | Month 32 | Month 33 | Month 34 | Month 35 | Month 36 | Total |
| DME Revenue (Net of Contractuals) | | $ 1,094,413 | $ 1,203,854 | $ 1,324,240 | $ 1,456,664 | $ 1,602,330 | $ 1,762,563 | $ 1,938,820 | $ 2,132,701 | $ 2,345,972 | $ 25,779,363 |
| Sales Service Revenue | | 264,653 | 269,946 | 275,345 | 280,852 | 286,469 | 292,198 | 298,042 | 304,003 | 310,083 | 8,061,727 |
| **Gross Revenue** | | **$ 1,359,066** | **$ 1,473,800** | **$ 1,599,585** | **$ 1,737,515** | **$ 1,888,799** | **$ 2,054,761** | **$ 2,236,861** | **$ 2,436,704** | **$ 2,656,054** | **$ 33,841,090** |
|  | | | | | | | | | | | |
| COGS | | $ (295,492) | $ (325,041) | $ (357,545) | $ (393,299) | $ (432,629) | $ (475,892) | $ (523,481) | $ (575,829) | $ (633,412) | $ (6,960,428) |
| Commissions | | (339,268) | (373,195) | (410,514) | (451,566) | (496,722) | (546,395) | (601,034) | (661,137) | (727,251) | (7,991,603) |
| Sales Service Commissions | | (66,163) | (67,486) | (68,836) | (70,213) | (71,617) | (73,050) | (74,510) | (76,001) | (77,521) | (2,015,432) |
| Salaries | | (193,600) | (193,600) | (193,600) | (193,600) | (193,600) | (193,600) | (193,600) | (193,600) | (193,600) | (6,755,200) |
| Tax & Benefit Expense | | (125,797) | (133,199) | (141,320) | (150,230) | (160,007) | (170,739) | (182,520) | (195,455) | (209,658) | (3,520,069) |
| Professional Fees | | - | - | - | - | - | - | - | - | - | - |
| Software Expenses | | (93,807) | (103,188) | (113,506) | (124,857) | (137,343) | (151,077) | (166,185) | (182,803) | (201,083) | (2,209,660) |
| Rent | | (20,587) | (20,587) | (20,587) | (20,587) | (20,587) | (20,587) | (20,587) | (20,587) | (20,587) | (722,310) |
| Travel & Meals | | (78,172) | (85,990) | (94,589) | (104,047) | (114,452) | (125,897) | (138,487) | (152,336) | (167,569) | (1,841,383) |
| Utilities | | (1,210) | (1,210) | (1,210) | (1,210) | (1,210) | (1,210) | (1,210) | (1,210) | (1,210) | (39,720) |
| **Operating Expenses** | | **$ (1,214,095)** | **$ (1,303,495)** | **$ (1,401,706)** | **$ (1,509,608)** | **$ (1,628,167)** | **$ (1,758,446)** | **$ (1,901,615)** | **$ (2,058,958)** | **$ (2,231,892)** | **$ (32,055,805)** |
|  | | | | | | | | | | | |
| **Net Disposable Income** | | **144,971** | **170,305** | **197,878** | **227,907** | **260,631** | **296,315** | **335,247** | **377,746** | **424,163** | **$ 1,785,285** |

15%
$912,721.83

Presuming No Further Services of Former NS

| Decrease in Revenue | | $ (598,019) | $ (657,820) | $ (723,602) | $ (795,963) | $ (875,559) | $ (963,115) | $ (1,059,426) | $ (1,165,369) | $ (1,281,906) | $ (14,086,581) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Decrease in Sales Service Revenue | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ (395,455) |
| Decrease in COGS | | 161,465 | 177,612 | 195,373 | 214,910 | 236,401 | 260,041 | 286,045 | 314,650 | 346,115 | 3,803,377 |
| Decrease in Commissions | | 185,386 | 203,924 | 224,317 | 246,748 | 271,423 | 298,566 | 328,422 | 361,264 | 397,391 | 4,366,840 |
| Decrease in Sales Service Commissions | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | 98,864 |
| Decrease in Salary | | 19,803 | 19,803 | 19,803 | 19,803 | 19,803 | 19,803 | 19,803 | 19,803 | 19,803 | 1,092,362 |
| Decrease in Tax & Benefits | | 43,090 | 46,983 | 51,265 | 55,976 | 61,158 | 66,858 | 73,127 | 80,024 | 87,611 | 1,154,572 |
| Decrease in Travel and Meals | | 28,142 | 30,956 | 34,052 | 37,457 | 41,203 | 45,323 | 49,855 | 54,841 | 60,325 | 662,898 |
|  | | | | | | | | | | | |
| **Adjusted Net Disposable Income** | | **$ (15,162)** | **$ (8,237)** | **$ (914)** | **$ 6,839** | **$ 15,060** | **$ 23,791** | **$ 33,074** | **$ 42,960** | **$ 53,501** | **$ (1,517,838)** |

15%
($1,385,856.00)

$2,298,577.83

**EXHIBIT C**
**LIQUIDATION ANALYSIS**

Pivotal Med Supply LLC
Case No. 25-40248 (Bankr. N.D. Tex.)
**LIQUIDATION ANALYSIS**

ASSETS

| Description | Value per Schedules | Security Interest | Liquidation Value (as of 4-22-25) |
|---|---|---|---|
| Pinnacle Bank - Operating | 58,987.00 | | $ 15,856 |
| Pinnacle Bank - Collections | 2,246.00 | | $ 6,838 |
| Security Deposit - Atlanta | 14,255.00 | 14,255.00 | $ - |
| Security Deposit - Southlake | 4,875.00 | 4,875.00 | $ - |
| Liability Insurance Prepayment | 1,200.00 | 1,200.00 | $ - |
| Accounts Receivable | 795,651.76 | | $ 250,012 |
| Notes Receivable | 201,869.67 | | $ 242,806 |
| Finished Goods | 51,248.67 | | $ 214,893 |
| Office Equipment & Furniture | 23,000.00 | | $ 23,000 |
| Intangibles | 500.00 | | $ 500 |
| Claims against Next Science | 10,000.00 | | $ 10,000 |
| Contribution Claims - Employees | 5,000.00 | | $ 5,000 |
| | $ 1,168,833.10 | | $ 768,905 |

| Chapter 7 Expenses | | |
|---|---|---|
| Chapter 7 Trustee Fee | | $ 41,695 |
| Chapter 7 Professional Fees | | $ 20,000 |
| TOTAL: | | $ 61,695 |

| Chapter 11 Administrative Expenses | | |
|---|---|---|
| US Trustee Fees | | |
| Subchapter V Trustee Fees | | $ 5,000 |
| Professional Fees (net of Retainer Deposits) | | $ 75,000 |
| Unpaid Operating Expenses | | $ 26,000 |
| TOTAL: | | $ 106,000 |

Priority Tax Claims

Other Priority Unsecured Claims

**NET AVAILABLE FOR GENERAL UNSECURED CREDITORS**     $ 601,210

**EXHIBIT D**
**ASSUMED CONTRACTS**

**EXHIBIT E**
**PAYMENTS TO CREDITORS WITHIN 90 DAYS PRIOR TO PETITION DATE**

SOFA 3 - 90 day transfers to Creditors

## 90 Day Transfers to Creditors

| Row Labels | Oct-24 | Nov-24 | Dec-24 | Jan-25 | Grand Total |
|---|---|---|---|---|---|
| 206 - SAVI PROVISION | | | | | |
| ADOBE | | | 13.81 | 13.81 | 35.10 |
| ADVANCEMD | | 658.48 | 577.32 | 564.93 | 1,800.73 |
| ALPHAGRAPHICS | 458.70 | 1,154.96 | | | 1,613.66 |
| AMAZON | 101.00 | 1,077.08 | 1,257.54 | 641.51 | 3,077.13 |
| AMERICAN AIRLINES | | 730.95 | | | 730.95 |
| Arturo Rocha | | 1,460.00 | 1,135.00 | | 2,595.00 |
| Atmos Energy | | 189.80 | 266.72 | | 456.52 |
| Availly | 26.66 | | | | 26.66 |
| AVEN CHASTAIN | | | 2,432.61 | | 2,432.61 |
| Bill.com | | | | 0.97 | 0.97 |
| BLUEHOST | | 359.88 | | | 359.88 |
| BRADLEY AIRPORT | | 162.00 | 242.00 | | 404.00 |
| BROOKWOOD | | | 223.81 | | 223.81 |
| Calendy | | | 611.75 | | 611.75 |
| CANTINA LAREDO | | | 127.09 | | 127.09 |
| CELL CONSTRUCTS | 9,359.72 | | 15,287.66 | | 24,647.38 |
| CHATGPT | | 20.20 | 20.20 | 20.20 | 60.60 |
| CNN | | | 9.97 | | 9.97 |
| CodeTwo | | 97.46 | 97.46 | 97.46 | 292.38 |
| CORPNET.COM | 7,406.51 | | | 153.47 | 7,559.98 |
| Culhane Meadows Haughian & Walsh | | | | 110,000.00 | 110,000.00 |
| DELTA AIR LINES | 921.94 | 2,730.07 | 1,601.93 | 1,106.98 | 6,360.92 |
| DIGITAL COMPLIANCE | | 259.69 | | | 259.69 |
| DOORDASH | | | 79.19 | | 79.19 |
| EASYPOST | 100.00 | 200.00 | 150.00 | 100.00 | 550.00 |
| EVENT CONNECT | | | 30.00 | | 30.00 |
| FEDEX_EXPRESS | 991.90 | 4,869.66 | 3,995.18 | 2,785.09 | 12,641.83 |
| FIGS SCRUBS GROUP | (78.22) | 188.20 | | | 109.98 |
| Frontier | 63.77 | | 63.77 | 63.77 | 191.31 |
| Goodwin Proctor | | | | 10,504.00 | 10,504.00 |
| Gray Robinson | | | | 18,412.50 | 18,412.50 |
| Greenlee Business | 9,125.00 | | | 4,625.00 | 13,750.00 |
| GROVE MEDICAL | 10,303.60 | | | | 10,303.60 |
| Gusto | | 533.00 | 533.00 | 553.77 | 1,619.77 |
| Hertz | | | | 557.37 | 557.37 |
| Hertz Toll | | | | 557.37 | 557.37 |
| HILL LIQUORS | | | | 24.56 | 24.56 |
| Hilton | | | 63.09 | | 63.09 |
| HIREQUEST DIRECT | 5,350.77 | 5,375.15 | | 5,182.82 | 15,908.74 |
| Interest Charge | 1,833.08 | 2,247.40 | | | 4,080.48 |
| Intuit | | 95.94 | 95.94 | 69.29 | 261.17 |
| IRON AGE | | | 124.13 | | 124.13 |
| Iron Mountain | 125.27 | 11.95 | 116.82 | 11.95 | 265.99 |
| JF Mouton | 17,083.33 | | | | 17,083.33 |
| KID CASHEW | | | | 982.95 | 982.95 |

SOFA 3 - 90 day transfers to Creditors

| Row Labels | Oct-24 | Nov-24 | Dec-24 | Jan-25 | Grand Total |
|---|---|---|---|---|---|
| Ksib Consulting | 20,000.00 | | | | 20,000.00 |
| Lehrman | | 4,602.00 | | | 4,602.00 |
| LR Logistics | | | | 4,696.75 | 4,696.75 |
| MAILCHIMP LLC | | 20.00 | 20.00 | 20.00 | 60.00 |
| MBRO | 19,218.78 | 9,609.39 | | | 28,828.17 |
| MICRO ELECTRONICS | | 1,006.98 | 1,187.16 | | 2,194.14 |
| MICROSOFT | 10,138.53 | 8,256.79 | | 8,095.22 | 26,490.54 |
| MPM MEDICAL | | 29,033.77 | | | 29,033.77 |
| Nelson Mullins | | | | 18,457.00 | 18,457.00 |
| NUMBERBARN | 66.48 | 23.56 | 23.56 | 23.56 | 137.16 |
| Parking | | | 151.14 | | 151.14 |
| PCI L476 DALLAS | | 302.29 | 209.85 | | 512.14 |
| Pinnacle Monthly charge | 81.00 | 48.50 | 39.50 | 60.00 | 229.00 |
| Premier RX | | 20,314.07 | | | 20,314.07 |
| PRX | | 34,604.48 | | | 34,604.48 |
| RECOVERY TOOL SALA | | | 31.32 | | 31.32 |
| Richi Plaza | 900.00 | 900.00 | | | 1,800.00 |
| RING CENTRAL INC | 368.00 | 377.20 | 374.20 | | 1,119.40 |
| Rippling - People Center | 4,500.00 | | 50.00 | 18,019.80 | 22,569.80 |
| ROADIE | | 97.04 | | | 97.04 |
| RUBY VR | | 257.66 | 257.66 | 268.60 | 783.92 |
| SAMSCLUB | 426.54 | 254.89 | | | 681.43 |
| SMART N GO | | | 4.28 | | 4.28 |
| SOUTHWEST AIRLINES | | 475.96 | | | 475.96 |
| SSL2BUY.COM | | 150.00 | | | 150.00 |
| STARBUCKS | | 22.58 | 11.29 | | 33.87 |
| Summer Energy | 798.52 | 569.96 | 477.87 | | 1,846.35 |
| SUN SCIENTIFIC | | 565.97 | | | 565.97 |
| TACO MAC | | 476.92 | | | 476.92 |
| The Burgess Hot | | | 5.45 | | 5.45 |
| THE GREAT GREEK | | | 28.48 | | 28.48 |
| THE PIANO BAR | | | 25.43 | | 25.43 |
| TRAVEL AIRPORT | | | 27.06 | | 27.06 |
| TRUEDIALOG | 1,303.96 | 1,303.83 | | 1,303.88 | 3,911.67 |
| TWO ROADS TAP ROOM | | | 59.37 | | 59.37 |
| UBER | 756.88 | 836.36 | | | 1,593.24 |
| UBER EATS | 455.05 | 599.54 | | | 1,054.59 |
| ULINE | 1,581.16 | 1,130.87 | | 589.65 | 3,301.68 |
| UPRINTING | 931.41 | | | | 931.41 |
| UPS | | | | 23.39 | 23.39 |
| USPS | 345.00 | 510.39 | | | 855.48 |
| VANDYKE HOWARD | | | | 82.25 | 82.25 |
| VISTAPRINT | | | 212.26 | | 212.26 |
| WALMART | | | - | 105.93 | 105.93 |
| WARWICK MELROSE | | 971.14 | | | 971.14 |
| WESTFAX INC. 62 | 85.95 | 72.44 | 54.80 | | 213.19 |
| WESTIN | 1,200.89 | 2,142.87 | | | 3,343.76 |
| WHEN I WORK | 100.00 | | 50.00 | | 150.00 |

Transfers to/from Insider
EPFJL

SOFA 3 - 90 day transfers to Creditors

| | | | | | |
|---|---|---|---|---|---|
| WHITE CHEDDAR SKINNY | | | | $ 52.36 | $ 6.67 |
| WORDSWORTH | | | | 52.36 | 6.67 |
| **Grand Total** | 89523.2 | 121136.77 | 70536.73 | 229033.61 | 510230.31 |

| Date | Description | Entity | Type | Insider | Amount | Balance Due From (to) Creditor |
|---|---|---|---|---|---|---|
| | 2023 Beginning Balance | | Beginning Balance | N | | (228,736.09) |
| 1/2/2024 | OLB Transfer from 7860 to 7863 Pocutal Monthly Rent | Greenlee | Bank Transfer | Y | (4,500.00) | (233,236.09) |
| 1/12/2024 | OLB Transfer from 7860 to 7863 Transfer | | Bank Transfer | Y | (60,000.00) | (293,236.09) |
| 1/19/2024 | OLB Transfer from 7860 to 7863 Loan to PMS | | Bank Transfer | Y | (100,000.00) | (393,236.09) |
| 1/29/2024 | OLB Transfer from 7860 to 7863 Pocutal Monthly Rent | Greenlee | Bank Transfer | Y | (4,500.00) | (397,736.09) |
| 1/29/2024 | OLB Transfer from 7860 to 7863 Loan to PMS | | Bank Transfer | Y | (90,000.00) | (487,736.09) |
| 2/27/2024 | OLB Transfer from 7860 to 7863 Pocutal Monthly Rent | Greenlee | Bank Transfer | Y | (4,500.00) | (492,236.09) |
| 3/13/2024 | OLB Transfer from 7860 to 7863 Loan to PMS | | Bank Transfer | Y | (85,000.00) | (577,236.09) |
| 3/15/2024 | OLB Transfer from 7860 to 7863 Loan to PMS | | Bank Transfer | Y | (40,000.00) | (617,236.09) |
| 3/19/2024 | OLB Transfer from 7860 to 567 Loan to PMS | | Bank Transfer | Y | (5,000.00) | (622,236.09) |
| 3/7/2024 | OLB Transfer from 7860 to 7863 Pocutal Monthly Rent | Greenlee | Bank Transfer | Y | (5,000.00) | (627,236.09) |
| 3/29/2024 | OLB Transfer from 7860 to 7863 Payroll | | Bank Transfer | Y | (184,500.00) | (811,736.09) |
| 4/11/2024 | OLB Transfer from 7860 to 567 Pocutal Loan | | Bank Transfer | Y | (105,000.00) | (706,736.09) |
| 4/17/2024 | OLB Transfer from 7860 to 7863 Pocutal Loan | | Bank Transfer | Y | (80,000.00) | (806,736.09) |
| 4/22/2024 | OLB Transfer from 7860 to 7863 Pocutal Monthly Rent | Greenlee | Bank Transfer | Y | (4,500.00) | (881,235.09) |
| 4/29/2024 | Contract Labor | Hedglet | Contract Labor | N | (1,919.14) | (863,154.23) |
| 4/29/2024 | Hedglet Charge FA | Hedglet | Bank Transfer | Y | (75,000.00) | (938,154.23) |
| 5/1/2024 | Due to/from - EPFJL | Hedglet | Contract Labor | N | 3,919.14 | (938,235.09) |
| 5/2/2024 | OLB Transfer from 7860 to 567 Loan to PMS | | Bank Transfer | Y | (100,000.00) | (1,036,235.09) |
| 5/6/2024 | OLB Transfer from 7860 to 567 Loan to PMS | | Bank Transfer | Y | (100,000.00) | (1,138,235.09) |
| 5/10/2024 | OLB Transfer from 7860 to 567 PMS Loan | | Bank Transfer | Y | (75,000.00) | (1,211,235.09) |
| 5/17/2024 | OLB Transfer from 7860 to 567 Loan to PMS | | Bank Transfer | Y | (70,000.00) | (1,281,235.09) |
| 5/?/2024 | OLB Transfer from 7860 to 7863 Pocutal Monthly Rent | Greenlee | Bank Transfer | Y | (4,500.00) | (1,265,735.09) |
| 5/28/2024 | OLB Transfer from 7860 to 7863 Pocutal Monthly Rent - Greenlee | | Bank Transfer | Y | (75,000.00) | (1,340,735.09) |
| 5/30/2024 | OLB Transfer from 7860 to 567 PMS Loan | | Bank Transfer | Y | (200,000.00) | (1,540,735.09) |
| 6/2/2024 | OLB Transfer from 7860 to 567 Transfer | | Bank Transfer | Y | (175,000.00) | (1,716,735.09) |
| 6/13/2024 | OLB Transfer from 7860 to 567 loan to PMS | | Bank Transfer | Y | (100,000.00) | (1,815,735.09) |
| 6/20/2024 | OLB Transfer from 7860 to 7863 Pocutal Monthly Rent | Greenlee | Bank Transfer | Y | (4,500.00) | (1,820,235.09) |
| 6/21/2024 | OLB Transfer from 7860 to 567 Transfer | | Bank Transfer | Y | (100,000.00) | (1,920,235.09) |
| 6/27/2024 | OLB Transfer from 7860 to 7863 Pocutal Monthly Rent | Greenlee | Bank Transfer | Y | (100,000.00) | (2,010,235.09) |
| 6/28/2024 | OLB Transfer from 7860 to 567 Loan to PMS | | Bank Transfer | Y | (100,000.00) | (2,110,235.09) |
| 7/1/2024 | OLB Transfer from 7860 to 567 Transfer | | Bank Transfer | Y | (4,500.00) | (2,124,735.09) |
| 7/22/2024 | OLB Transfer from 7860 to 7863 Pocutal Monthly Rent - Greenlee | | Bank Transfer | Y | (490,000.00) | (2,614,735.09) |
| 7/31/2024 | OLB Transfer from 7860 to 567 loan t EPFL to PMS | Greenlee | Bank Transfer | Y | (4,500.00) | (2,619,235.09) |
| 8/27/2024 | OLB Transfer from 7860 to 7863 Pocutal Monthly Rent - Greenlee | Greenlee | Bank Transfer | Y | (4,500.00) | (2,619,235.09) |
| 8/31/2024 | Settlement as of 08.30.24 | | Settlement | N | 2,819,235.09 | - |
| 9/26/2024 | Pinnacle - 1367 - Operating Account | | Agency Payment | N | (132,914.43) | (132,914.43) |
| 9/30/2024 | Due to/from - EPFJL | | Agency Payment | N | 102,914.43 | - |

Transfers to/from Insider
Total Ancillary Management, LLC

| Posting Date | To (From) Third Party | Document No. | Category | Balance due to/(from) Debtor |
|---|---|---|---|---|
| 10/27/2023 | (67,976.09) | G00049 | 2023 Beginning Balance | (67,976.09) |
| 2/8/2024 | (4,595.91) | G00058 | Contract Labor | (72,572.00) |
| 2/9/2024 | (632.20) | G00060 | Reimbursements | (73,204.20) |
| 2/20/2024 | (1,212.98) | G00059 | Reimbursements | (74,417.18) |
| 2/26/2024 | (268.00) | G00062 | Business license | (74,685.18) |
| 2/26/2024 | (198.00) | G00065 | CorpNet | (74,883.18) |
| 2/26/2024 | (149.00) | G00063 | CorpNet | (75,032.18) |
| 2/26/2024 | (1,703.80) | G01317 | Reimbursements | (76,735.98) |
| 2/29/2024 | (974.25) | G00066 | Pacific Credit Services | (77,710.23) |
| 3/16/2024 | (362.64) | G00067 | MOCKINGBIRD ANSWER | (78,072.87) |
| 3/31/2024 | (1,133.12) | G00068 | Reimbursements | (79,205.99) |
| 5/1/2024 | (1,919.14) | G00348 | HIRERIGHT | (81,125.13) |
| 5/1/2024 | (20,604.51) | G00350 | Insurance | (101,729.64) |
| 5/1/2024 | (374.45) | G00349 | RUBY Answering SERVICE | (102,104.09) |
| 6/1/2024 | (19,644.18) | G00355 | Insurance | (121,748.27) |
| 6/3/2024 | 22,757.00 | G00344 | Employee Bonus | (98,991.27) |
| 6/13/2024 | (1,000.00) | G00356 | Ascensus | (99,991.27) |
| 6/26/2024 | 129.09 | G00354 | Commissions | (99,862.18) |
| 6/26/2024 | 413.10 | G00352 | Commissions | (99,449.08) |
| 6/26/2024 | 1,912.50 | G00353 | Commissions | (97,536.58) |
| 6/26/2024 | 6,120.00 | G00351 | Commissions | (91,416.58) |
| 7/1/2024 | (644.68) | 7.1 PR | 401k | (92,061.26) |
| 7/1/2024 | (38,910.64) | G00357 | Insurance | (130,971.90) |
| 7/1/2024 | (3,039.46) | 7.1 PR | Insurance | (134,011.36) |
| 7/5/2024 | (293.05) | 7.5 PR | Insurance | (134,304.41) |
| 7/16/2024 | (900.00) | 7.16 PR | 401k | (135,204.41) |
| 7/16/2024 | (4,079.19) | 7.16 PR | Insurance | (139,283.60) |
| 7/19/2024 | (293.05) | 7.19 PR | Insurance | (139,576.65) |
| 7/31/2024 | 1,544.68 | G01198 | 401k | (138,031.97) |
| 7/31/2024 | 7,704.75 | G01198 | Insurance | (130,327.22) |
| 8/1/2024 | (1,231.09) | 8.1 PR | 401k | (131,558.31) |
| 8/1/2024 | 4,911.00 | 8.1 PR | Commissions | (126,647.31) |
| 8/1/2024 | (35,680.48) | G00357 | Insurance | (162,327.79) |
| 8/1/2024 | (4,079.19) | 8.1 PR | Insurance | (166,406.98) |
| 8/1/2024 | 331.49 | 8.1 PR | Contract Labor | (166,075.49) |
| 8/5/2024 | 2,121.18 | G01274 | Reimbursements | (163,954.31) |
| 8/5/2024 | 24,972.19 | G01274 | Employee Bonus | (138,982.12) |
| 8/30/2024 | (3,261.28) | 8.30 PR | 401k | (142,243.40) |
| 8/30/2024 | (293.05) | G00229 | Benefits | (142,536.45) |
| 8/30/2024 | 60,102.00 | 8.30 PR | Commissions | (82,434.45) |
| 8/30/2024 | (4,079.19) | 8.30 PR | Insurance | (86,513.64) |

Transfers to/from Insider
Total Ancillary Management, LLC

| Posting Date | To (From) Third Party | Document No. | Desc Main | Balance due to/(from) Debtor |
|---|---|---|---|---|
| 8/30/2024 | 4,056.89 | 8.30 PR | Contract Labor | (82,456.75) |
| 8/31/2024 | 4,492.37 | G01199 | 401k | (77,964.38) |
| 8/31/2024 | 8,451.43 | G01199 | Insurance | (69,512.95) |
| 9/1/2024 | 71,634.13 | G01318 | Contract Labor | 2,121.18 |
| 9/1/2024 | (6,748.14) | 109066 | Contract Labor | (4,626.96) |
| 9/12/2024 | 20.00 | G00347 | Reimbursements | (4,606.96) |
| 9/12/2024 | 415.40 | G00346 | Reimbursements | (4,191.56) |
| 9/12/2024 | 422.33 | G00346 | Reimbursements | (3,769.23) |
| 9/12/2024 | 498.85 | G00346 | Reimbursements | (3,270.38) |
| 9/12/2024 | 644.46 | G00346 | Reimbursements | (2,625.92) |
| 9/12/2024 | 2,625.92 | G00346 | Reimbursements | 0.00 |
| 9/30/2024 | (156,935.00) | G01151 | Agency Payment | (156,935.00) |
| 9/30/2024 | 8,404.43 | G00361 | Commissions | (148,530.57) |
| 9/30/2024 | 124,510.00 | G00360 | Agency Payment | (24,020.57) |
| 9/30/2024 | 156,935.00 | G01077 | Agency Payment | 132,914.43 |
| 9/30/2024 | (132,914.43) | G00851 | Agency Payment | - |
| 10/1/2024 | 500.61 | 108549 | Reimbursements | 500.61 |
| 10/21/2024 | (500.61) | G04467 | Reimbursements | - |
| 10/25/2024 | 156,935.00 | G01152 | Agency Payment | 156,935.00 |
| **10/25/2024** | **(156,935.00)** | **G00912** | **Bank Transfer** | **-** |
| 10/31/2024 | (181,993.75) | G01153 | Agency Payment | (181,993.75) |
| 10/31/2024 | 181,993.75 | G01075 | Agency Payment | - |
| 11/19/2024 | 181,993.75 | G01154 | Agency Payment | 181,993.75 |
| **11/19/2024** | **(181,993.73)** | **G01019** | **Bank Transfer** | 0.02 |
| 11/19/2024 | (0.02) | G01252 | Bank Transfer | (0.00) |
| 12/31/2024 | 114,276.00 | G01441 | Agency Payment | 114,276.00 |
| **12/31/2024** | **(114,276.00)** | **G01378** | **Bank Transfer** | - |

**EXHIBIT F**
**FORM OF PLAN NOTE**

# UNSECURED PLAN
# PROMISSORY NOTE

**April 23, 2025**

FOR VALUE RECEIVED, **PIVOTAL MED SUPPLY, LLC,** a Texas limited liability company ("Borrower") promises to pay to [name of holder of Allowed Claim]  (the "Creditor") or order, the sum of [amount of Note] in principal with interest on the Principal from the date hereof, at the rate of the lesser of (a) the Plan Interest Rate per annum and (b) the highest interest rate permissible under applicable law, on the unpaid balance until paid or until default, both principal and interest payable in lawful money of the United States of America, at such place as the legal holder hereof may designate in writing.  This Note shall be governed by and subject to the terms of the [Plan of Reorganization and Confirmation Order].  The principal amount, together with all accrued and unpaid interest thereof, shall be fully and finally due and payable on third anniversary of the Effective Date (the "Maturity Date").

Interest shall accrue monthly on the principal amount still outstanding and owed from Borrower to Creditor.  This note is not secured by collateral.

Unless otherwise provided, this Note may be prepaid in full or in part at any time without penalty or premium.  Payments shall be applied first to fees and expenses outstanding, if any, then to accrued interest, then to principal.

In the event of a default in payment upon any obligation hereof as the same becomes due and such default is not cured within ten (10) days after written notice to Borrower (which shall be effective as of the date mailed by electronic mail addressed to Borrower at noah@pivotalmedsupply.com) this Note shall be in default.  Failure to exercise this option shall not constitute a waiver of the right to exercise the same at any other time.

Upon default, the holder of this Note may enforce the holder's rights and remedies and the Borrower.  The failure to exercise any such right or remedy shall not be a waiver or release of such rights or remedies or the right to exercise any of them at another time.

This Note is to be governed and construed in accordance with the laws of the State of Texas.  Borrower irrevocably consents to the exclusive jurisdiction of the state and federal courts located in Tarrant County, Texas for all disputes relating to the interpretation or enforcement of this Note and the collection of any amount due hereunder.

IN WITNESS WHEREOF, the Borrower has hereunto set its hand the day and year first above written.

[SIGNATURE OF REORGANIZED DEBTOR]